81 So.2d 486 (1955)
W.H. DOWNING and Anna B. Downing, his wife, Appellants,
v.
The FIRST NATIONAL BANK OF LAKE CITY, a banking corporation, Appellee.
Supreme Court of Florida. En Banc.
June 17, 1955.
Rehearing Denied July 14, 1955.
C.A. Avriett, Jasper, for appellants.
W.H. Wilson, Jr., and A.K. Black, Lake City, for appellee.
DREW, Chief Justice.
Appellants, W.H. Downing and his wife, Anna B. Downing, in February, 1926, executed jointly to appellee bank a $4,000 note secured by a mortgage on property the title to which was in the wife. In June, 1939, $2,828 remained due on the note and to take the account out of "past due status", the husband, alone, executed a new note *487 to appellee for that sum payable July 1, 1939. Under the date of November 28, 1939, appellants jointly executed an instrument assigning to appellee all their right, title and interest in an insurance policy in the amount of $5,000 on the life of the husband, in which the wife was the beneficiary. In March, 1941, the bank was named beneficiary in the policy itself.
In February, 1946, the appellee brought suit to foreclose the original mortgage and note, attaching to the complaint copies of both instruments. In October, 1952, the complaint was amended to base the cause of action upon the new note signed only by the husband, alleging that without impairment of the original debt the husband by signing the note "further bound the defendants to pay said amount of $2,828.00."
In the amendment appellee with reference to the insurance policy alleged that "in order to keep said policy in effect payment of premiums was necessary; that defendants failed to pay the same as due and in order to protect the parties hereto", the plaintiff paid premiums amounting to $3,900, and that such payments were "in truth and fact, in equity, a further advance on said original note and mortgage." Recovery was also sought for costs and attorney's fees for services in foreclosure of the mortgage and for other alleged debts of the husband not here in question.
Hearings were held before a special examiner. At these hearings, the appellee did not introduce into evidence the original note and mortgage nor make any accounting for the failure to produce these instruments. However, the $2,828 note signed only by Mr. Downing was received in evidence.
The only witness was the cashier for the bank. With reference to circumstances surrounding execution of the $2,828 note, the cashier's testimony is not clear but he did state that this note was accepted by the bank under an agreement with Mr. Downing that the original $4,000 note and mortgage would be collateral for the note. In this connection, just how Mr. Downing could put up property of the bank, which the mortgage obviously was, as security for the note, we fail to see.
The insurance policy and its assignment to appellee also were received in evidence. Concerning these instruments, the cashier testified in part as follows:
"Q. It was your understanding then at that time that the policy was taken out and delivered to the Bank as a further security for the indebtedness that Mr. Downing had at the Bank at that time? (Italics added.) A. That's true."
Later he testified about the insurance policy as follows:
"Q. Do you know whether or not this was intended to be as collateral for any debts that Mrs. Downing might owe the Bank? A. That was for either or both of them.
"Q. Was that agreement made with Mr. Downing? A. I don't know, I wasn't present.
"Q. You don't know whether or not she agreed to that or not? A. She signed it.
"Q. She signed what? A. Whatever you call it, the change of beneficiary.
"Q. Would you know whether or not in her agreeing to the change of beneficiary in the insurance policy that it was intended to be collateral for both her debts and Mr. Downing's debts, or just Mr. Downing's debts, or do you know? A. I wasn't present at the signing of this but my understanding was that it covered all the debts to the Bank by Mr. Downing or Mrs. Downing, that's what I presumed it to be."
Pursuant to report of the special examiner, who made no findings of fact, the trial court, among other things, ordered that both Mr. and Mrs. Downing pay the sum of $2,828 principal and $6,996.05 accrued interest plus attorney's fees, and the sum of $3,476.27, being the amount of premiums on the insurance policy paid by the bank, *488 plus interest thereon in the amount of $1,885.07, but failed to allow appellants any credit for the cash surrender value of the policy held by appellee; and the court further ordered that all such sums were a lien upon the property of the wife and directed that such property be sold to satisfy said decree.
Appellants urge that the decree for the $2,828 plus interest is erroneous because there was a failure to produce the original $4,000 note or to account for its absence; and that it was error to charge the property of the wife with a debt for insurance premiums paid by appellee.
It was incumbent on appellee to produce the original $4,000 note or to make a satisfactory explanation for failure to do so. Not having done so, it was reversible error for the trial court to enter the decree of foreclosure against the wife. Lenfesty v. Coe, 34 Fla. 363, 16 So. 277, where we held such failure precluded the entry of a valid decree and could be raised by the defendants even though a decree pro confesso had been entered against them. See also Johns Supply Co. v. McNeeley, 125 Fla. 306, 169 So. 732, 734, where we said:
"* * * We are cognizant of the fact that it has often been held that the master's report should show the production of the original note in cases where suit is on a note. See Lenfesty v. Coe, 34 Fla. 363, 16 So. 277; Scott v. Taylor, 63 Fla. 612, 58 So. 30; Fidelity & Deposit Co. of Maryland v. Aultman, 58 Fla. 228, 50 So. 991; International Kaolin Co. v. Vause, 62 Fla. 505, 57 So. 360.
"In Scott v. Taylor, supra, we held:
"`A mortgage executed as security for the payment of a negotiable promissory note is a mere incident of and ancillary to such note. When it comes to the payment thereof, the rights of the parties thereto, as well as of third persons, are governed by the rules relating to negotiable paper; in other words, payment to any one other than the holder of the negotiable instrument is at the risk of the payer and is binding upon the holder of the paper only where express or implied authority to receive such payment is established by the person making the same. Hence payment of a negotiable note secured by mortgage by the mortgagor or his grantee, where made to the original mortgagee who is not in possession of the note and mortgage, is not binding upon an assignee thereof before maturity who was in possession of the papers at the time of such payment, unless he had expressly or impliedly authorized such payment.'"
With reference to the insurance policy, under the decree as entered by the court, the appellee bank is in the following position: The bank still holds the insurance policy which has a minimum cash surrender value of $2,389.20, and is the owner thereof by reason of having an assignment from the assured and being the beneficiary. In addition, under the order of the court, the bank has obtained a decree for premiums paid in the amount of $3,476.27, plus interest thereon in the amount of $1,885.07, being a total of $5,361.34, all of which has been declared to be a lien on property of the wife.
Appellee seeks to justify the order for insurance premiums as a lien upon the land by claiming monies so paid by appellee were within a clause in the alleged original mortgage, providing that it covered "any and all future advances, either in money or supplies made by the party of the second part to the part of the first part." This clause is valid, Bullard v. Fender, 140 Fla. 448, 192 So. 167, although a statute enacted in 1941, now being Section 697.04 F.S. 1951, F.S.A., limits the scope of provisions for future advances. But we cannot agree that the money paid by the appellee as insurance premiums on a policy owned by it and accepted as collateral security was an advance of money to appellants within the scope of this clause. Payment of these premiums undoubtedly was for the primary benefit of the bank. In any event, there is nothing in the record to *489 show any benefit to Mrs. Downing by reason of such payments, nor to show any agreement with her with reference to the premiums which were paid by the bank. It was error to charge the wife's property with a lien for the amount of insurance premiums paid.
Moreover, if there is an obligation on the part of the husband to repay the bank for the premiums, the bank in seeking recovery for those sums paid for that, cannot be entitled to obtain from the husband reimbursement for premiums paid and still retain the insurance policy.
The cause is reversed for further proceedings consistent with the views expressed herein.
Reversed.
TERRELL, THOMAS, SEBRING, HOBSON and ROBERTS, JJ., concur.
THORNAL, J., not participating.