**DASMA INVESTMENTS, LLC, a Florida limited liability company, Plaintiff**

v.

**The REALTY ASSOCIATES FUND III, L.P., a Delaware limited partnership et al., Defendants**

**No. 05–23164CIV.**

United States District Court, S.D. Florida, Miami Division.

Oct. 30, 2006.

Guy B. Bailey, Esq., Bailey & Dawes L.C., Coconut Grove, FL for Plaintiff.

Christopher S. Carver, Esq., and Scott B. Cosgrove, Esq., Miami, FL, for Defendants.

### ORDER ON PENDING MOTIONS AND ORDER CLOSING CASE

JORDAN, District Judge.

This is the third federal case in a long legal saga over the 1995 sale by Padron

Warehouse Corporation of its only substantial asset—a warehouse in Miami—to The Realty Associates Fund III. In the prior two cases, Mary Angel Padron—the former wife of Cecilio Padron, the majority owner of PWC—and PWC itself sued Realty, alleging that the sale of the warehouse should be set aside for various reasons. Both actions were unsuccessful. *See Padron v. Realty Associates,* Case No. 01–1919–Civ–Jordan; *Padron Warehouse Corporation v. Realty Associates,* 377 F.Supp.2d 1259 (S.D.Fla.2005). In this case, Dasma Investments, LLC—a company recently formed by Ms. Padron—alleges that it is the assignee of an unpaid promissory note and mortgage from PWC, and sues PWC, Mr. Padron, Realty and others to foreclose on the note and mortgage.

Currently pending are various motions. For the reasons set forth below, the motion to remand filed by Dasma [D.E. 9] is DENIED, Dasma's claims against Principal Mutual Life Ins. Co.-a nominal defendant—are dismissed as moot, Realty's motion for summary judgment on Dasma's amended complaint [D.E. 12] is GRANTED, and Dasma's claims against PWC are dismissed for lack of a justiciable case or controversy under Article III because both Dasma and PWC are controlled by the same person, Ms. Padron. A partial final judgment in favor of Realty will be issued separately. This case is closed.

## I. BACKGROUND [1]

■ Pursuant to a 1994 post-nuptial agreement, Cecilio Padron received 68% of the stock of PWC, while his wife, Mary Angel Padron, received 30% of the stock,

and his brother, Felix Padron, received 2% of the stock. The agreement also provided that neither Mr. or Ms. Padron could alienate the warehouse without the other's consent.

In 1995, PWC, through Mr. Padron, sold the warehouse to Realty. According to Ms. Padron, Mr. Padron absconded to another country with all of the proceeds from the sale. The Padrons divorced in 1998.

In May of 2001, Ms. Padron sued Realty, alleging, among other things, conversion, civil theft, conspiracy, and unjust enrichment. She sought a constructive trust and an accounting, alleging that Mr. Padron had sold the warehouse without the required authorization, and that Realty had been aware of this fact. In October of 2001, I dismissed Ms. Padron's individual suit with prejudice on statute of limitations grounds. *See Padron v. Realty Associates,* Case No. 01–1919–Civ–Jordan. Ms. Padron did not appeal.

In January of 2002, PWC, now controlled by Ms. Padron, filed a second lawsuit against Realty. PWC, like Ms. Padron, alleged that the sale of the warehouse had not been properly authorized (in light of the post-nuptial agreement and an alleged PWC shareholder's agreement). PWC sought to quiet title in the warehouse, as well as a declaratory judgment that the sale of the warehouse was ineffective. In addition, PWC requested that Realty be ejected from the warehouse and asked for a constructive trust. In July of 2005, I granted summary judgment in favor of Realty on all of PWC's claims, and in favor of Realty on its claim for attorney's fees against PWC. *See Padron Warehouse Corporation v.*

---

1. The information is taken from the record in this case, as well as the filings, exhibits, and orders in the two previous cases I have handled concerning the sale of the warehouse. Those cases are summarized in the text. I have judicially noticed the records in those two other cases only for the purpose of providing background. *See United States v. Rey,* 811 F.2d 1453, 1457 n. 5 (11th Cir.1987).

*Realty Associates,* 377 F.Supp.2d 1259 (S.D.Fla.2005). PWC did not appeal.

## II. DASMA'S CURRENT LAWSUIT AND REALTY'S REMOVAL

This current case was filed in state court in October of 2005 by Dasma Investments, LLC, a Florida limited liability company whose only member (and registered agent) is Ms. Padron. According to documents attached to the notice of removal, Dasma was registered with the Florida secretary of state in September of 2005.

The defendants named in Dasma's initial complaint were Realty, PWC, Principal Mutual Life Insurance Company, and Mr. Padron (who, according to the complaint, now lives in Panama). Dasma seeks to foreclose on a promissory note and mortgage, and alleges in the complaint as follows: (1) in September of 1992 PWC executed and delivered a promissory note in the amount of $1.4 million (the original promissory note) to Ribonnet Overseas Corporation, a Virgin Islands entity headquartered in Panama; (2) the original note, which was secured by a mortgage on PWC's warehouse, was due to be paid by September of 2002; (3) in December of 1992, through a purported modification (a one-page document titled "Addendums"), the amount of the original note and mortgage was increased to $2.4 million; (4) in September of 2005, Ribonnet assigned the note and mortgage, as modified, to Dasma; (5) Dasma "currently owns and holds the modified instrument [i.e., the "Addendums"] in due course;" (6) the defendants, including PWC and Realty, failed to pay the note as modified; (7) Dasma declared the full amount of the note, as modified, due and owing; (8) the warranty deed that Realty holds is forged; (9) Principal "may claim" an interest in the warehouse due to an assignment of leases and rents, but that interest has been satisfied; and (10) Mr. Padron guaranteed the obligation of the mortgage.

Realty, which was served with process on November 22, 2005, removed the case to federal court on December 7, 2005, alleging that federal jurisdiction existed under the diversity statute, 28 U.S.C. § 1332. In its notice of removal, Realty indicated that Principal's counsel had consented to removal and asserted that PWC was fraudulently joined to defeat diversity. Realty pointed out that, as reflected in my orders in the two prior cases, PWC does not have title to the warehouse and therefore there is nothing for Dasma to foreclose on with respect to PWC.

On January 4, 2006, Dasma filed an amended complaint, adding as defendants 27 tenants of the warehouse. Two days later, on January 6, 2006, Dasma moved to remand the case to state court. In its motion, which was not accompanied by a memorandum of law, Dasma made the following summary arguments in favor of remand: (1) complete diversity was lacking because PWC and the newly-added 27 defendants were, like, Dasma, citizens of Florida; (2) PWC was not fraudulently joined; and (3) the other defendants did not timely join Realty's removal.

The parties presented oral argument on the motion to remand, and filed supplemental memoranda of law on various issues I asked them to brief, including (1) whether Ms. Padron's control of both Dasma (the plaintiff) and PWC (a defendant) amounted to a type of collusive joinder that affected Article III jurisdiction; (2) whether Realty's statement in its notice of removal that Principal consented to removal was sufficient to satisfy 28 U.S.C. §§ 1441 and 1446; and (3) whether the modification of the original PWC promissory note (the so-called "Addendums") was independently actionable without the original note.

## III. DASMA'S MOTION TO REMAND

 "In a motion to remand, the removing party bears the burden of showing the existence of federal jurisdiction." *Perez v. AT & T Co.*, 139 F.3d 1368, 1373 (11th Cir.1998) (citing *Diaz v. Sheppard*, 85 F.3d 1502, 1505 (11th Cir.1996)). Removal jurisdiction is "construed narrowly," and any doubts regarding the existence of federal jurisdiction are resolved in favor of the non-removing party, that is, in favor of remanding the matter back to the state court from whence it came. *Perez*, 139 F.3d at 1373.

### A. PRINCIPAL'S FAILURE TO TIMELY CONSENT TO REMOVAL IN WRITING

 In a case involving multiple defendants, all defendants who have been served must consent to the removal of a case to federal court. *See Russell Corp. v. American Home Assurance Co.*, 264 F.3d 1040, 1049 (11th Cir.2001). The question presented by Dasma's motion to remand is what consent means. Dasma argues that under §§ 1441 and 1446, it is not enough for a removing defendant to simply allege in its notice of removal that the other served defendants consent to removal. According to Dasma, all other served defendants must file their own written consents within 30 days of removal, and remand is required here because Principal's written consent on February 16, 2006 [D.E. 24], was untimely. Realty asserts that its statement of consent in the notice of removal—that Principal's counsel had consented to removal—is enough. There is support in the case law for both positions, though there is no binding authority in the Eleventh Circuit. *Compare, e.g., Local Union No. 172 v. P.J. Dick, Inc.*, 253 F.Supp.2d 1022, 1025–26 (S.D.Ohio 2003), *with, e.g., Sicinski v. Reliance Funding Corp.*, 461 F.Supp. 649, 651 (S.D.N.Y. 1978).

 It is unnecessary for me to take a position on this issue. The well-established rule is that a nominal defendant need not join in or consent to removal, *see Tri–Cities Newspapers, Inc. v. Tri–Cities Printing & Assistants Local 349*, 427 F.2d 325, 327 (5th Cir.1970), and Principal is a nominal defendant in this action. Principal is not a party to the original note, the modified note, or the mortgage, and was named as a defendant only because it might have an interest in the warehouse pursuant to an assignment of rents and leases. Dasma's own complaint, however, alleges that Principal's interest in the warehouse (based on this assignment) "has been satisfied," and Principal's answer confirms that Principal has no further interest in the assignment of rents and leases because its loan has been paid. In short, there is no claim that Dasma can make against Principal, and no effective relief that Dasma can obtain against Principal, thereby making Principal a nominal defendant whose consent to removal was not required. *See id.*[2]

### B. DASMA'S AMENDED COMPLAINT NAMING 27 TENANTS AS DEFENDANTS

 Dasma also argues that remand is required because its amended complaint, filed after removal, lists 27 tenants of the warehouse, and those tenants, like Dasma, are citizens of Florida. This means, according to Dasma, that complete diversity does not exist.

 But a plaintiff like Dasma is not automatically entitled to add non-diverse

2. Dasma has not alleged, much less proven, that Mr. Padron has been served with process. Nor has it argued that, under these circumstances, Mr. Padron had to consent to Realty's removal. Accordingly, Mr. Padron's consent to removal was not required.

defendants following removal to destroy diversity. Instead, 28 U.S.C. § 1447(e) gives a court discretion to allow joinder of non-diverse parties and remand the case to state court, or deny joinder and have the case continue in federal court. *See Ingram v. CSX Transp., Inc.*, 146 F.3d 858, 861–62 (11th Cir.1998). The factors a court should consider include the plaintiff's motivation for joinder of the non-diverse parties, the prejudice to the plaintiff if the amendment is not allowed, the timing of the amendment, the original defendant's choice of forum (through removal), and the likelihood of multiple litigation. *See, e.g., Hensgens v. Deere & Co.*, 833 F.2d 1179, 1181–82 (5th Cir.1987); *Wyant v. Nat. R.R. Passenger Corp.*, 881 F.Supp. 919, 925 (S.D.N.Y.1995). Here these factors weigh against allowing post-removal amendment of the complaint to add the 27 tenants. Dasma's primary motivation in adding the 27 tenants is to defeat federal jurisdiction and to get away from a forum where Ms. Padron and PWC have not had past success with regard to the warehouse. Dasma has no independent causes of action against the tenants, as it just wants a receiver appointed to collect the rent payments from the warehouse and hold those payments until the case is resolved. There is, therefore, no danger of multiple litigation. In any event, Dasma can obtain the relief it seeks—appointment of a receiver who will collect and hold the rents—without joining the tenants as defendants.

Accordingly, I am permitting Dasma to amend its complaint in part. Dasma may amend its allegations, but may not add the 27 tenants as defendants. The amended complaint, as so limited, is currently the operable pleading.

### C. The Alleged Fraudulent Joinder of PWC

■ The next issue with respect to Dasma's remand motion is whether PWC—a Florida corporation—was fraudulently joined. If there was no fraudulent joinder, then PWC's presence in the case destroys diversity jurisdiction and remand to state court is required.

■ If a plaintiff names a non-diverse defendant solely to defeat federal diversity jurisdiction "a district court must ignore the presence of the non-diverse defendant and deny any motion to remand the matter back to state court." *Henderson v. Washington Nat'l Ins. Co.*, 454 F.3d 1278, 1281 (11th Cir.2006). "[A] federal court may then appropriately assert its removal diversity jurisdiction over the case." *Id.*

■ In a removal case alleging a fraudulent joinder of the non-diverse defendant, the removing party must prove that either: "(1) there is no possibility the plaintiff can establish a cause of action against the resident defendant; or (2) the plaintiff has fraudulently pled jurisdiction facts to bring the resident defendant into state court." *Id.* The removing party's burden is a heavy one, as it "must make such a showing by clear and convincing evidence." *Id.* (citing *Parks v. New York Times Co.*, 308 F.2d 474, 478 (5th Cir. 1962)). Thus, "[w]here a plaintiff states even a colorable claim against the resident defendant, joinder is proper and the case should be remanded to state court." *Perez*, 139 F.3d at 1380.

■ "The determination of whether a resident [i.e., non-diverse] defendant has been fraudulently joined must be based upon the plaintiff's pleadings *at the time of removal,* supplemented by any affidavits and deposition transcripts submitted by the parties." *Legg v. Wyeth*, 428 F.3d 1317, 1322 (11th Cir.2005) (quoting *Perez*, 139 F.3d at 1380) (emphasis added). *See also Pullman Co. v. Jenkins*, 305 U.S. 534, 537–38, 59 S.Ct. 347, 83 L.Ed. 334 (1939);

*Bobby Jones Garden Apartments, Inc. v. Suleski,* 391 F.2d 172, 176 (5th Cir.1968). The proceedings used "for resolving a claim of fraudulent joinder is similar to that used for ruling on a motion for summary judgment under" Rule 56(b) of the Federal Rules of Civil Procedure. *Legg,* 428 F.3d at 1323 (quoting *Crowe v. Coleman,* 113 F.3d 1536, 1538 (11th Cir.1997)). Accordingly, I must "resolve all questions of fact ... in favor of the plaintiff." *Legg,* 428 F.3d at 1323 (quoting *Cabalceta v. Standard Fruit Co.,* 883 F.2d 1553, 1561 (11th Cir.1989)). There must, however, exist some question of fact before a matter can be resolved in the plaintiff's favor. *Legg,* 428 F.3d at 1323. If the plaintiff does not dispute a defendant's factual allegations, there is no question of fact for the court to resolve, nor can the court resolve the facts in the plaintiff's favor "based solely on the unsupported allegations in the plaintiffs' complaint." *Id.* Put simply, although the remand inquiry

> requires all disputed questions of fact be resolved in favor of the nonremoving party, as with a summary judgment motion, in determining diversity the mere assertion of metaphysical doubt as to the material facts [is] insufficient to create an issue if there is no basis for those facts. So also as with a summary judgment motion we resolve factual controversies in favor of the nonmoving party, but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts. We do not, however, in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts.

*Id.* (internal citations and quotation marks omitted).

Realty argues that Dasma fraudulently joined PWC because (1) Ribonnet executed and delivered a satisfaction of mortgage on the exact mortgage at issue here; (2) Realty holds, and is in possession of, the original promissory note, which was satisfied, and given by PWC to Realty at the closing for the warehouse; and (3) any action by Dasma to avoid the effect of the satisfaction would be time-barred. Dasma essentially responds that it has the right to collect on the unpaid note and mortgage because of the assignment from Ribonnet. I recognize that proving fraudulent joinder by clear and convincing evidence is a difficult undertaking, but here Realty has made that showing insofar as PWC is concerned.

In order to succeed on its claims with respect to the note and mortgage against PWC, Dasma must of course show that the note remains unpaid. Dasma has accordingly submitted the affidavit of Benito Peralta Gomez, the president of Ribonnet, who avers that the note was not paid off—the last payment was received in April of 2005—and that the satisfaction of the mortgage and cancellation of the note were a mistake. According to Mr. Gomez, the satisfaction and cancellation were supposed to be held in escrow until Ribonnet received the moneys it was due (presumably from the proceeds of the sale of the warehouse to Realty). Mr. Gomez says that the transaction then "fell through the cracks" until September of 2005.[3] Taking Mr. Gomez's affidavit at face value, Dasma has presented sufficient evidence that Ribonnet did not receive from PWC the

---

3. One has to wonder how in the world a debt of over $2 million could "fall through the cracks" for a decade, particularly when the required payments under the note were not being made. I understand that I am not permitted to weigh testimony at this stage, however, and I have not taken this matter into account in my ruling. I accept Mr. Gomez's averments as true.

amounts due under the original promissory note and the modified promissory note. But, as explained below, evidence of lack of payment is not enough for Dasma to state a colorable claim against PWC on the note and mortgage.

Under Florida law, a promissory note is a negotiable instrument. *See Perry v. Fairbanks Capital Corp.,* 888 So.2d 725, 726 (Fla. 5th DCA 2004). A party suing on a promissory note—whether just on the note itself or together with a claim to foreclose on a mortgage securing the note—must therefore be in possession of the original of the note or reestablish the note pursuant to Fla. Stat. § 673.3091. If it is not in possession of the original note, and cannot reestablish it, the party simply may not prevail in an action on the note. *See, e.g., Perry,* 888 So.2d at 726; *State Street Bank & Trust Co. v. Lord,* 851 So.2d 790, 791 (Fla. 4th DCA 2003); *Figueredo v. Bank Espirito Santo,* 537 So.2d 1113, 1113 (Fla. 3rd DCA 1989); *Shelter Dev. Group, Inc. v. Mma of Georgia, Inc.,* 50 B.R. 588, 590 (Bkrtcy.S.D.Fla.1985) (applying Florida law). *See also* Fla. Stat. § 90.953 (with respect to negotiable instruments, a copy or duplicate is *not* admissible to the same extent as the original).

The insurmountable problem for Dasma here is that it is not in possession of the original promissory note from PWC to Ribonnet. It is undisputed that Ribonnet returned the original note to PWC, that PWC gave the original note (as cancelled) to Realty, and that Realty is currently in possession of the original note. *See* Realty's Statement of Facts at ¶¶ 19–21 (not disputed by Dasma). The only document that Dasma has in its possession is the one-page "Addendums," which purports to modify paragraphs 1 and 2 of the original note but states that all other terms and conditions in the original note remain unchanged and in full force and effect. Fur-

thermore, neither Dasma or Ribonnet has made any attempt to reestablish the note pursuant to § 673.3091.

Dasma suggests that it may nevertheless proceed against PWC because it is in possession of the one-page "Addendums," which purportedly modified the original promissory note, but it has not cited any authorities in support of its position. In any event, any such suggestion lacks merit.

First, the "Addendums" cannot stand alone as a negotiable instrument, as it incorporates and maintains in full force and effect all of the non-modified provisions of the original promissory note. In other words, the "Addendums" is dependent on the original promissory note. This being the case, Dasma must be in possession of the original note or reestablish it.

Second, Dasma's suggestion does not account for *Downing v. First Nat. Bank of Lake City,* 81 So.2d 486 (Fla.1955). In that case, a bank obtained a promissory note from a husband and wife for a $4,000 loan it made to them, with the note being secured by a mortgage on property held by the wife. Years later, to take the note out of past due status, the husband alone executed a new note for $2,828 (the amount then due), and both husband and wife assigned to the bank all of their interest in a life insurance policy in the amount of $5,000 on the life of the husband (in which the wife was the beneficiary). The bank ultimately sued to foreclose the original mortgage and note, and attached copies of both instruments to its complaint. The bank later amended its complaint to "base the cause of action upon the new note signed only by the husband, alleging that without impairment of the original debt the husband by signing the note 'further bound [himself and his wife] to pay said amount of $2,828.'" *Id.* at 487. At trial, the bank introduced the original of

the subsequent note signed only by the husband, but did not introduce the original of the earlier note signed by both husband and wife. A witness for the bank testified that the original note and mortgage were supposed to be collateral for the subsequent note, but the Florida Supreme Court noted that "just how [the husband] could put up property of the bank, which the mortgage obviously was, as security for the note, we fail to see." *Id.* The bank obtained a judgment against the husband and wife for $2,828 plus interest, attorney's fees, and premiums paid by the bank for the life insurance policy. On appeal, the Florida Supreme Court reversed the judgment in favor of the bank. Even though the bank's amended complaint sought to recover only with respect to the subsequent note, the Florida Supreme Court ruled that the bank was required to produce the original note with respect to the wife: "It was incumbent on [the bank] to produce the original $4,000 note or to make a satisfactory explanation for failure to do so. Not having done so, it was reversible error for the trial court to enter the decree of foreclosure against the wife." *Id.* at 488. Although *Downing* is not on "all fours," it certainly suggests that, if a subsequent modified note is dependent on the original note, the original note must be produced.

In sum, Dasma does not have possession of the original promissory note, and as a matter of Florida law it cannot (without reestablishing the original note or alleging facts which might allow it to do so) sue PWC on the "Addendums" (a document which is itself dependent on the original note) and to foreclose the mortgage securing the original note. Under these circumstances, Dasma's joinder of PWC was fraudulent for purposes of removal, so PWC's status as a defendant does not destroy diversity.[4]

## IV. REALTY'S MOTION FOR SUMMARY JUDGMENT

As noted earlier, the fraudulent joinder analysis is conducted under the familiar Rule 56 summary judgment standard. Summary judgment is appropriate if there are no material facts in dispute and, based on the undisputed facts (or the facts viewed in favor of the non-moving party), the moving party is entitled to judgment as a matter of law. *See, e.g., Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Hilburn v. Murata Electronics*, 181 F.3d 1220, 1225 (11th Cir.1999).

 Realty moves for summary judgment on Dasma's amended complaint on various grounds. It is unnecessary to address all of the grounds, as one is dispositive. As explained above, it is undisputed that Realty currently holds the original promissory note. Dasma is not in possession of the original promissory note, and the one-page "Addendums" in Dasma's possession is dependent on the original note. Without the original note, Dasma cannot prevail in a mortgage foreclosure action against Realty under these circumstances. *See, e.g., Perry*, 888 So.2d at 726; *Lord*, 851 So.2d at 791; *Figueredo*, 537 So.2d at 1113; *Shelter Dev. Group*, 50 B.R. at 590. *See also Downing*, 81 So.2d at 487–88. Tellingly, Dasma has not cited any Florida authorities supporting its con-

---

4. There is another possible reason why PWC's presence does not require remand. As explained below in the text, it is undisputed that both Dasma and PWC are controlled by the same person, Ms. Padron, and Supreme Court precedent will not permit a federal court to entertain a lawsuit between two corporations controlled by the same individual. If there is no justiciable Article III controversy between Dasma and PWC, it seems to me that PWC's presence can be ignored for diversity purposes.

tention that, even without possession of the original note, it can sue on that note or the "Addendums" and foreclose on the mortgage securing the note. Accordingly, Realty is entitled to summary judgment on Dasma's amended complaint.

Alternatively, Dasma's claim against Realty must be dismissed without prejudice. As explained below, there is no justiciable Article III controversy between Dasma and PWC, and as a result Dasma's claim against PWC is being dismissed for lack of subject-matter jurisdiction. Unless Dasma prevails against PWC with respect to the note, it cannot prevail against Realty to foreclose the mortgage and obtain other relief with respect to the warehouse. In other words, a prerequisite to Dasma's claim against Realty—a victory on the claim on the note—is missing.

## V. THE REMAINING CLAIMS AGAINST PRINCIPAL AND PWC

 Principal, as discussed above, is a nominal defendant, and both Principal and Dasma agree that Principal's interest in the warehouse (through the assignment of rents and leases) has been satisfied. As a result, there is no live case or controversy between Dasma and Principal, and Dasma's claims against Principal are dismissed as moot.

That leaves Dasma's claims against PWC. It is undisputed that Ms. Padron controls both Dasma and PWC: she is the only member and registered agent of Dasma (the plaintiff), and she is the majority shareholder and sole officer of PWC (one of the defendants). *See* Realty's Statement of Facts at ¶¶ 4, 12 (not disputed by

Dasma). Insofar as an action between Dasma and PWC is concerned, therefore, the necessary adversity under Article III of the Constitution is lacking.[5] PWC has made no attempt to respond to Dasma's claims, and this should not be not surprising, because Ms. Padron controls both Dasma and PWC, and it is in Dasma's interest that PWC not dispute any of the allegations as to the note and mortgage made by Dasma.

Over a century ago, the Supreme Court held that a federal court could not adjudicate an action between two corporations controlled by the same person, even if one of the corporations had some minority shareholders, and even if there was no collusion. *See South Spring Hill Gold Min Co. v. Amador Medean Gold Min Co.*, 145 U.S. 300, 301, 12 S.Ct. 921, 36 L.Ed. 712 (1892) ("We cannot ... consent to determine a controversy in which the plaintiff has become the *dominus litis* on both sides."). That is exactly the situation between Dasma and PWC here. Because a federal court "lack[s][the] authority to act in friendly or feigned proceedings," *Arizonans for Official English v. Arizona*, 520 U.S. 43, 71, 117 S.Ct. 1055, 137 L.Ed.2d 170 (1997), Dasma's remaining claims against PWC are dismissed without prejudice for lack of subject-matter jurisdiction under Article III.

## VI. CONCLUSION

Dasma's motion to remand is denied, and Realty's motion for summary judgment is granted. Alternatively, Dasma's claims against Realty are dismissed without prejudice. Dasma's claims against

---

5. There is an Article III controversy insofar as the action, "in its entirety," is concerned because there is sufficient adversity between Dasma and Realty. *See Brown and Williamson Tobacco Corp. v. Daniel Int'l Corp.*, 563 F.2d 671, 673–74 (5th Cir.1977). But once

Realty is out of the picture, there is no "honest and antagonistic assertion of rights to be adjudicated—a safeguard essential to the integrity of the judicial process." *United States v. Johnson*, 319 U.S. 302, 304, 63 S.Ct. 1075, 87 L.Ed. 1413 (1943).

Principal are dismissed as moot, and Dasma's claims against PWC are dismissed without prejudice for lack of subject-matter jurisdiction under Article III.

A partial final judgment in favor of Realty will be issued separately. This case is closed.