Affirmed and Opinion filed July 28, 2011. 

 

In The

 

Fourteenth Court of
Appeals

___________________

 

NO. 14-10-00300-CV

___________________

 

Prabhakar Guniganti, M.D.,
Appellant

 

V.

 

Laxman Kalvakuntla, M.D., Sarma S. Challa,
M.D., and Bhagvan R. Malladi, M.D., Appellees



 



 

On
Appeal from the 269th District Court

Harris County,
Texas



Trial Court Cause No. 2007-67845

 



 

 

OPINION

            Seeking to collect the balance due on a promissory note
(Note) and to foreclose on land securing the Note, appellant Prabhakar
Guniganti, M.D., sued a limited partnership of which he, and appellees Laxman
Kalvakuntla, M.D., Sarma S. Challa, M.D., and Bhagvan R. Malladi, M.D., were
partners.  Appellees, who with Guniganti were guarantors of the Note,
intervened, arguing limitations barred Guniganti’s claims.  The trial court
granted appellees’ motion for partial summary judgment on the ground of
limitations and subsequently signed a final declaratory judgment by which the
court decreed limitations barred enforcement of the promissory note and the
deed of trust and awarded appellees attorneys’ fees.  In three issues,
Guniganti argues the trial court erred in (1) permitting appellees to
intervene, (2) holding the Note was not a negotiable instrument and his claims
were therefore barred by a four-year statute of limitations period, and (3)
rendering an impermissible declaratory judgment.  We affirm.

Background

            Guniganti
and appellees were limited partners in GCKM (the partnership), which acquired
acreage in Harris County for the purpose of developing the land as a
residential subdivision.[1]  On July 12, 2000, the partnership executed the Note payable
to OmniBank, N.A., and secured by a Deed of Trust to the acreage.  The original
principal amount of the note was $2,948,523.45 “or so much thereof as is advanced
and outstanding from time to time . . . .”  The Note also provided, “NOT ALL of
the principal amount of this Note has been advanced on the date hereof.  Additional
advances will be made in accordance with the terms and conditions of the Loan
Agreement, reference to same being here made for all purposes.”  Guniganti and
appellees executed personal guaranties of the Note.

            In
June 2002, the partnership and the guarantors were in default on the Note, and
the acreage was posted for foreclosure.  In August 2002, the partnership and
OmniBank executed a Modification of the Note and Deed of Trust (Modification),
effective June 12, 2002.  The Modification recited that the principal balance
remaining was $1,439,491.21 and the final maturity date was December 12, 2002. 
The Modification further provided, “except as to such changes made herein, the
terms and provisions of the Note as modified hereby shall be brought forward
and remain in all respects unchanged . . . .”  Finally, the Modification
states, “If any inconsistency exists between this [Modification] and the terms
of the Note and/or Security Documents, this [Modification] shall control and
the Note and Security Documents shall be construed accordingly.”

            The
Note again went into default.  By a Transfer of Note and Lien (Transfer) dated
June 30, 2003, Guniganti and appellees purchased the Note and Deed of Trust
from OmniBank.  By the terms of the Transfer, Guniganti obtained a 40% undivided
interest in the Note and Deed of Trust, and appellees each obtained a 20% undivided
interest.[2]

            On
November 2, 2007, Guniganti sued the partnership.  He sought “damages in the
amount of 40% of the unpaid balance due on the Note and Modification” and
“judicial foreclosure of the Deed of Trust and order of sale.”  The partnership
answered, alleging in part that limitations barred Guginganti’s claims.

            Appellees
filed a plea in intervention.[3]  They alleged that, “[w]ithin the meaning of Rule 39
Texas Rules of Civil Procedure, [they were] indispensable parties to the
prosecution of the claims set forth by Guniganti in this litigation.”  They
argued that Guniganti lacked standing to enforce the “Note and Deed of Trust,
Security Agreement and Financing Statement” without their consent and that the
four-year statute of limitations set forth in Texas Civil Practice and Remedies
Code sections 16.004 and 16.035 barred recovery on the Note and foreclosure
under the Deed of Trust, respectively.  They requested that Guniganti take
nothing on his action against the partnership, that the court enter a
declaratory judgment that the “Note and Deed of Trust, Security Agreement and
Financing Statement are barred by the applicable statutes of limitations,” and
that the court award appellees their costs and attorneys’ fees.

            Guniganti
filed a motion to strike the intervention, which the trial court denied.[4]  Appellees then filed a motion for partial summary
judgment on the following grounds:  “(1) enforcement of the Note is barred by
the applicable statutes of limitations; (2) foreclosure of the Deed of Trust is
barred by the applicable statutes of limitations; and (3) because Guniganti is
not the owner of the Note and Deed of Trust, he may not enforce either of them.” 
They argued the four-year statute of limitations for a contractual debt, rather
than the six-year statute of limitations for a negotiable instrument, applied
to the Note because the Note did not contain an unconditional promise to pay a
fixed amount of money.  In so arguing, appellees observed that the Note
extended a line of credit and, furthermore, it was necessary to look to other
instruments to understand the rights and obligations under the Note.

            The
trial court granted partial summary judgment and ordered Guniganti’s claims on
the Note dismissed with prejudice.[5]  The court stated that “[f]or the reasons stated in
the Motion for Partial Summary Judgment,” neither the Note alone, nor the
Modification alone, nor the Note as amended by the Modification, were negotiable
instruments, and therefore, the four-year statute of limitations applied.  The
order on the partial summary judgment did not dispose of appellees’ claims for
declaratory relief.

            Following
an evidentiary hearing on attorneys’ fees, the trial court rendered a final
judgment.  After referring to its previous order granting partial summary
judgment, the court decreed enforcement of the Note and the Deed of Trust,
subsequently modified, was barred by limitations.  The court further ordered
attorneys’ fees against Guniganti in the amount of $45,858.50 plus
post-judgment interest.

Discussion

I.  Propriety of the
Intervention

            In
his first issue, Guniganti argues the trial erred in allowing appellees to
intervene because they had no standing in the matter.  “Any party may intervene
by filing a pleading, subject to being stricken out by the court for sufficient
cause on the motion of any party.”  Tex. R. Civ. P. 60.  The trial court has
broad discretion in determining whether to strike an intervention.  Guar.
Fed. Sav. Bank v. Horseshoe Operating Co., 793 S.W.2d 652, 657 (Tex. 1990);
Jabri v. Alsayyed, 145 S.W.3d 660, 671 (Tex. App.—Houston [14th Dist.]
2004, no pet.)  After a party files a motion to strike, the burden shifts to
the intervenor to show a justiciable interest in the lawsuit.  Jabri,
145 S.W.3d at 672 (citing Mendez v. Brewer, 626 S.W.2d 498, 499 (Tex.
1982)).

            The
interest the intervenor asserts may be legal or equitable in nature.  Mendez,
626 S.W.2d at 499; Jabri, 145 S.W.3d at 672.  A party has a justiciable
interest in a lawsuit, and thus a right to intervene, when his interests will
be affected by the litigation.  Jabri, 145 S.W.3d at 672.  “[U]nder Rule
60, a person or entity has the right to intervene if the intervenor could have
brought the same action, or any part thereof, in his own name, or, if the
action had been brought against him, he would be able to defeat recovery, or
some part thereof.”  Guar. Fed., 793 S.W.2d at 657.  It is an abuse of
discretion to strike a plea in intervention if (1) the intervenor meets this
test, (2) the intervention will not complicate the case by an excessive
multiplication of the issues, and (3) the intervention is almost essential to
effectively protect the intervenor’s interest.  Id.

            Neither
Guniganti’s motion to strike, nor appellees’ response, nor a reporter’s record
of any hearing thereon are part of the appellate record.[6]  We may therefore assume any evidence before the
trial court on the issue of the intervention was adequate to support the trial
court’s decision.  See City of Houston v. Woods, 138 S.W.3d 574,
580 (Tex. App.—Houston [14th Dist.] 2004, no pet.) (“The party complaining of
an abuse of discretion bears the burden of bringing forth the record showing
such abuse; in the absence of the record, the reviewing court must assume the
evidence before the trial court was adequate to support the decision.”).

            In
relation to the propriety of the intervention, the record before this court shows
that appellees collectively owned a 60% undivided interest in the Note and Deed
of Trust, with Guniganti owning the remaining 40%.  It is undisputed that the
intervenors were limited partners in the partnership that made the Note, as
well as personal guarantors.  At the time the trial court denied Guniganti’s
motion to strike the intervention, Guniganti still was asserting a claim for
foreclosure.  Guniganti’s claims necessarily implicated the ongoing interests
of appellees.

            For
the foregoing reasons, we cannot conclude the trial court abused its discretion
in denying Guniganti’s motion to strike appellees’ plea in intervention. 
Accordingly, we overrule Guniganti’s first issue.

II.  Propriety of Four-Year
Limitations Period

            In
issue two, Guniganti argues the trial court erred in holding that limitations
barred his claim.  Guniganti does not dispute that his cause of action for
breach of the Note accrued on December 12, 2002, when the Note, as modified,
was not paid at maturity.  See G & R Inv. v. Nance, 683 S.W.2d 727,
728 (Tex. App.—Houston [14th Dist.] 1984, writ ref’d n.r.e.).

            Guniganti
filed suit November 2, 2007.  Thus, if Guniganti’s suit is one on a contractual
debt and governed by the four-year statute of limitations, it is barred.  See
Tex. Civ. Prac. & Rem. Code § 16.004(a)(3) (setting forth suit on a debt as
subject to four-year limitations period); Diversified Fin. Sys., Inc. v.
Hill, Heard, O’Neal, Gilstrap, & Goetz, P.C., 99 S.W.3d 349, 359 (Tex.
App.—Fort Worth 2003, no pet.) (“Generally, a suit on a note must be filed
within four years from the date the cause of action accrues.”).   Guniganti,
however, argues the Note is a negotiable instrument under the Uniform
Commerical Code and a six-year limitation period applies to his suit.  See
Tex. Bus. & Com. Code § 3.118(a) (“[A]n action to enforce the obligation of
a party to pay a note payable at a definite time must be commenced within six
years after the due date or dates stated in the note or, if a due date is
accelerated, within six years after the accelerated due date.”).  The
negotiability of an instrument is a question of law.  FFP Mktg. Co., Inc. v.
Long Lane Master Trust IV, 169 S.W.3d 402, 407 (Tex. App.—Fort Worth 2005,
no pet.).   

            Subject
to exceptions not relevant here, “‘negotiable
instrument’ means an unconditional promise or order to pay a fixed amount of
money, with or without interest or other charges described in the promise or
order . . . .”  Tex. Bus. & Com. Code § 3.104(a).  Appellees argue the
Note, as modified, does not qualify as a negotiable instrument because it is
not for a fixed amount of money and does not constitute an unconditional
promise.

            We consider first whether the Note,
considered together with the Modification, constitutes an unconditional promise
to pay.[7] 
Because we conclude the Note does not constitute an unconditional promise, we
need not consider whether the Note is for a fixed amount of money.

            Uniform Commercial Code section
3.106(a), which defines an unconditional promise or order, provides in relevant
part:

[F]or the purposes of Section 3.104(a), a promise or order
is unconditional unless it states (i) an express condition to payment, (ii)
that the promise or order is subject to or governed by another record, or (iii)
that rights or obligations with respect to the promise or order are stated in
another record.

Id. § 3.106(a).

            The comments to section 3.106
further explain that a promissory note is not a negotiable instrument if it contains
a statement indicating that the rights and obligations of the parties with
respect to the note are stated in another agreement.  Id. § 3.106 cmt.
1.[8]  “The rationale [for
precluding reference to other documents] is that the holder of a negotiable
instrument should not be required to examine another document to determine rights
with respect to payment.”  Id.

Nevertheless, subsection (a) also provides, “A
reference to another record does not of itself make the promise or order
conditional.”  Id. § 3.106(a).  Additionally, as set forth in subsection
(b), “A promise or order is not made conditional (i) by a reference to another
record for a statement of rights with respect to collateral, prepayment, or
acceleration, or (ii) because payment is limited to resort to a particular fund
or source.”  Id. § 3.106(b).

In the present case, the Modification contains references
to the Deed of Trust, the Loan Agreement, the Collateral Assignment of Deposit
Accounts, the Guaranty Agreements executed by Guniganti and appellees,[9] the “Stated Rate,”[10] the “Maximum
Rate”[11]
and the Note.  The Note contains references to the
Guaranty Agreements executed by Guniganti and appellees, the Deed of Trust and
the Loan Agreements.

            We assume,
without deciding, that the Modification’s references to the Loan Agreement,
Deed of Trust, Collateral Assignment and Guaranty Agreements and the Note’s references
to the Guaranty Agreements and the Deed of Trust are references to statements
of rights regarding collateral and do not defeat negotiability.  See id.
§ 3.106(b)(i); see also Cont’l Nat’l Bank of Fort Worth v. Conner, 214
S.W.2d 928, 931 (Tex. 1948) (indicating mere statement regarding other
documents or reference to security given for note will not render note non-negotiable).
 We also assume, without deciding, that the Modification’s references to
interest rates (requiring one to consult another record to determine same) do
not defeat negotiability.  See Tex. Bus. & Com. Code § 3.112(b); see
also Dale A. Whitman, How Negotiability Has Fouled Up the Secondary
Mortgage Market, and What to Do About It, 37 Pepp. L. Rev. 737, 748 (2010)
(interpreting parallel UCC section).

We conclude, however, that the Note’s references to the
Loan Agreement rendered the Note non-negotiable, a condition which the
Modification did not cure.  The Note provided, inter alia:

            NOT ALL of the principal amount of this Note
has been advanced on the date hereof. Additional advances will be made in
accordance with the terms and conditions of the Loan Agreement, reference
to same being here made for all purposes. Interest shall accrue only on
funds from date of advancement. A default under said Loan Agreement will
constitute a default hereunder.[12]

            The preceding
language is more than a “mere statement” referring to the Loan Agreement.  See
Conner, 214 S.W.2d at 931.  This language burdened the Note with the
conditions of the Loan Agreement.  See id.  Thus, the Note did not
contain an unconditional promise to pay and was not a negotiable instrument.  See
FFP Mktg., 169 S.W.3d at 408 (holding notes at issue failed requirement for
unconditional promise because they incorporated by reference the terms of other
documents); see also Mitchell v. Riverside Nat’l Bank, 613 S.W.2d 802,
803 (Tex. Civ. App.—Houston [14th Dist.] 1981,
writ ref’d, n.r.e.) (holding language “‘is subject to and governed by said
contract which is hereby expressly referred to, incorporated herein and made a
part hereof . . . .’” rendered note non-negotiable).[13]

For similar reasons, we conclude the Modification did
not constitute an unconditional promise and, therefore, was not a negotiable
instrument.  The Modification expressly provided, “It is understood and agreed
that except as to such changes made herein, the terms and provisions of the
Note as modified hereby shall be brought forward and remain in all respects
unchanged . . . .”  It further provided, “The provisions of the Note and/or
Security Documents shall continue in full force and effect.  Obligors acknowledge
and reaffirm Obligors’ respective liability to Lender under the Note and/or
Security Documents.”

It is irrelevant whether any condition to payment is
or is not stated in the provisions of the Note that apply to the Modification. 
See Tex. Bus. & Com. Code § 3.106 cmt. 1.  Just as the Note was
burdened by the Loan Agreement, the Modification was burdened by the Note and therefore
was not negotiable.  See FFP Mktg., 169 S.W.3d at 408; see also Dasma
Invs. LLC v. Realty Assocs. Fund III, L.P., 459 F. Supp. 2d 1294, 1302
(S.D. Fla. 2006) (“[The modification] cannot stand alone as a negotiable
instrument, as it incorporates and maintains in full force and effect all of
the non-modified provisions of the original promissory note.  In other words,
the [modification] is dependent on the . . . note.”); cf. Burns v.
Resolution Trust Corp., 880 S.W.2d 149, 153 (Tex. App.—Houston [14th Dist.]
1994, no writ) (observing, in situation where notes underlying assumption and
modification agreements were negotiable, that, under predecessor to present
section 3.117, court looks to the terms of a note for satisfaction of
negotiability requirements).

            Guniganti also argues the trial
court granted partial summary judgment on a ground appellees did not raise.  See
Stiles v. Resolution Trust Corp., 867 S.W.2d 24, 26 (Tex. 1993) (“[T]he
language [of Rule 166a(c)] is to unequivocally restrict the trial court’s
ruling to issues raised in the motion, response, and any subsequent replies.”).

            In their motion, appellees
argued, “For several reasons, the Note, as modified by the Modification, does
not qualify as a negotiable instrument within the meaning of the Texas Uniform
Commercial Code.”  Among the reasons appellees provided was the fact the Note
made multiple references to other documents, including the Loan Agreement.  As
discussed above, the Modification referred to the Note and carried forward any
provisions of the Note not inconsistent with provisions in the Modification.

            In granting the motion for
partial summary judgment, the trial court organized its reasons differently from
appellees and added to the reasons they presented[14]  Nevertheless,
the court also concluded that, “for the reasons stated in the Motion for
Partial Summary Judgment,” the Note, the Modification, and Note as amended did
not constitute a negotiable instrument.  Accordingly, the trial court explicitly
granted partial summary judgment on grounds raised in the motion.

            As discussed above, we have found
one of the grounds in appellees’ motion meritorious.  We therefore overrule
Guniganti’s second issue.  See Martin v. Sw. Elec. Power Co., 860 S.W.2d
197, 199 (Tex. App.—Texarkana 1993, writ denied) (holding judgment must be
affirmed if there is any legal ground presented to trial court on which it can
be upheld, even if court’s reason was erroneous), cited with approval in
Wimmer v. State, No. 03-03-00135-CV, 2004 WL 210629 at *2 (Tex. App.—Austin
Feb. 5, 2004, pet. denied) (mem. op.).

III.  Propriety of Declaratory Judgment

            In issue three, Guniganti argues
the trial court improperly granted declaratory judgment.  In the judgment, the
trial court decreed that limitations barred enforcement of both the Note as
modified and the Deed of Trust.

            The purpose of the Uniform
Declaratory Judgments Act is “to settle and to afford relief from uncertainty
and insecurity with respect to rights, status, and other legal relations; and
it is to be liberally construed and administered.”  Tex. Civ. Prac. & Rem.
Code § 37.002(b).  The act further provides in relvant part:

A person interested under a deed . . . , written contract,
or other writings constituting a contract or whose rights, status, or other
legal relations are affected by a . . . contract . . . may have determined any
question of construction or validity arising under the instrument . . . [or]
contract . . . and obtain a declaration of rights, status, or other legal
relations thereunder.

Tex. Civ. Prac. & Rem.
Code § 37.004(a).

            In suits for
declaratory relief, a trial court has limited discretion to refuse a
declaratory judgment, and may do so only when judgment would not remove the
uncertainty giving rise to the proceedings.  SpawGlass Constr. Corp. v. City
of Houston, 974 S.W.2d 876, 878 (Tex. App.—Houston [14th Dist.] 1998, pet.
denied).  A declaratory judgment is appropriate when a real controversy exists
between the parties and a court may determine the entire controversy by
judicial declaration.  Id. at 879.  To constitute a justiciable controversy,
the controversy must be real and substantial and involve a genuine conflict of
tangible interests and not merely be a theoretical dispute.  Id.

            The Declaratory
Judgments Act is not available to settle disputes already pending before a
court.  Riddick v. Quail Harbor Condo. Ass’n, 7 S.W.3d 663, 672 (Tex.
App.—Houston [14th Dist.] 1999, no pet.).  A defensive declaratory judgment,
however, may present issues beyond those the plaintiff has raised.  BHP
Petroleum Co. v. Millard, 800 S.W.2d 838, 841 (Tex. 1990).  When a
declaratory judgment counterclaim has greater ramifications than the original
suit—such as settling future disputes—a court may allow the counterclaim.  See
Winslow v. Acker, 781 S.W.2d 322, 328 (Tex. App.—San Antonio 1989, writ
denied), cited with approval in Millard, 800 S.W.2d at 841–42.  A
counterclaim has greater ramifications than the original suit if it seeks
affirmative relief.  HECI Exploration Co. v. Clajon Gas Co., 843 S.W.2d
622, 638–39 (Tex. App.—Austin 1992, writ denied).  A counterclaim states a
claim for affirmative relief if it alleges that the defendant has a cause of
action independent of the plaintiff’s claim, on which the defendant could
recover benefits, compensation, or relief, even if the plaintiff were to
abandon or fail to establish his cause of action.  See Millard,
800 S.W.2d at 841.

            In his
brief-in-chief, Guniganti argues declaratory judgment was improper because the
issue appellees raised was already before the court by virtue of appellees’
affirmative defense of limitations.  Appellees respond that their request for
declaratory judgment was appropriate because (1) their interests under their
personal guarantees went beyond the claims Guniganti asserted against the
partnership and (2) they were seeking a declaration of an ongoing and
continuous relationship.  In reply, Guniganti relies on his initial argument and
also argues that (1) no controversy existed regarding the deed of trust because
he had abandoned his claim of foreclosure under the deed of trust and (2) appellees
were not entitled to an award of attorneys’ fees on a declaratory judgment to
remove a cloud on title.  On this record, we cannot conclude the trial court
abused its discretion in rendering a declaratory judgment and awarding
appellees their attorneys’ fees.

The trial court’s declaration regarding enforcement
of the Note as modified was arguably redundant with its previous ruling on the
motion for partial summary judgment, based on appellees’ affirmative defense of
limitations to enforcement of the Note.  The court’s declaration regarding
enforcement of the Deed of Trust, however, arguably went beyond its ruling on
enforcement of the Note.

            Although
Guniganti argues there was no justiciable controversy regarding the Deed of
Trust because he had abandoned his claim for foreclosure, he also argues appellees’
affirmative defense of limitations to enforcement of the Deed of Trust was pending
before the court and declaratory judgment was improper for that reason.  Guniganti
cannot have it both ways.  By the time the court ruled on appellees’ request
for declaratory judgment, the court had ordered Guniganti’s foreclosure claim
abandoned, and thus, appellees’ affirmative defense to that claim was necessarily
no longer before the court.

Finally, Guniganti argues an award of attorneys’ fees
is not permissible in a suit to remove a cloud on title.  Guniganti relies on Southwest
Guaranty Trust Co. v. Hardy Road 13.4 Joint Venture, 981 S.W.2d 951 (Tex.
App.—Houston [1st Dist.] 1998, pet. denied).  Southwest Guaranty
involved a party seeking a declaration that a lien on its property was invalid
and that the lien be released of record.  See id. at 957.  As part of
its judgment, the trial court declared title quieted.  See id.  The trial
court also denied attorneys’ fees.  See id. at 956.  The appellate court
held “that the trial judge did not abuse his discretion [in disallowing
attorneys’ fees] because he could have determined, as we have, that the suit
for declaratory judgment was no more than a suit to quiet title, on which no
attorney’s fees may be awarded.”  Id. at 957.

In Max Duncan Family Investments, Ltd. v. NTFN,
Inc., the Dallas Court of Appeals rejected an appellant’s reliance on Southwest
Guaranty under circumstances similar to those in the present case.  267
S.W.3d 447, 453–54 (Tex. App.—Dallas 2008, pet. denied).[15]  In Max Duncan,
the appellees had sought a declaration that a note and lien were void as
arising from an interested director transaction.  Id. at 449–50.  The
trial court agreed, granted summary judgment in favor of appellees, and awarded
appellees attorney’s fees.  Id. at 450.  After observing appellant’s
reliance on Southwest Guaranty was “misplaced,” the appellate court
opined:

            Here, [appellees] NTFN and Morningside brought
a declaratory judgment action to invalidate the Note and the lien securing the
Note.  The Uniform Declaratory Judgment Act (“UDJA”) permits a party to bring a
declaratory judgment action to invalidate a real estate note, as well as any
lien securing the note.  See Tex.
Civ. Prac. & Rem Code Ann. § 37.004(a) (Vernon 2002).  The UDJA also
provides that in any proceeding under the act a court may award costs and
reasonable attorney’s fees as are equitable and just.  See Tex. Civ. Prac. & Rem. Code Ann. §
37.009 (Vernon 2002).  The trial court’s decision concerning the grant or denial
of attorney’s fees in a declaratory judgment action will not be reversed on
appeal absent a clear showing of an abuse of discretion.  Knighton v. Int’l
Bus. Mach. Corp., 856 S.W.2d 206, 210 (Tex. App.—Houston [1st Dist.] 1993,
writ denied).  This action involves more than just title and possession of real
property; the action concerns the validity of a real estate lien note.
Therefore, the action may be brought under the UDJA and costs and attorney’s
fees may be recovered.  See Shankles v. Shankles, 195 S.W.3d 884, 885–86
(Tex. App.—Dallas 2006, no pet.).  Under the circumstances of this case, we
cannot conclude the trial court abused its discretion in awarding Morningside
and NTFN costs and attorney’s fees.

Id. at 453–54.

Like the trial court in Max Duncan and unlike
that in Southwest Guaranty, the trial court in the present case exercised
its discretion to award attorneys’ fees.  Given the relationships among the
parties,[16]
the nature of the intervenors’ affirmative claims, and the partnership’s
relative inactivity in the case, the trial court could have reasonably
determined appellees’ request for declaratory judgment was more than merely a
ploy to recover attorneys’ fees.

For the preceding reasons, we cannot conclude the trial
court abused its discretion in rendering the declaratory judgment and awarding appellees
their attorneys’ fees.  We therefore overrule Guniganti’s third issue.

Conclusion

Having overruled Guniganti’s three issues, we affirm
the judgment.

 

                                                                                    

                                                                        /s/        Martha
Hill Jamison

                                                                                    Justice

 

 

 

Panel consists of Justices Brown,
Boyce, and Jamison.

 









[1] GCKM was originally known
as Holley-Guniganti Kings Lake Estates, Ltd.  Although the limited partnership
documents are not part of the appellate record, the parties do not dispute the
facts surrounding formation of the limited partnership or its purpose in
acquiring the acreage.





[2] There is no endorsement
on the face of the Modification.





[3] Appellees asserted the
plea as “parties defendant,” but set forth an affirmative claim for declaratory
judgment as well as claiming the defense of limitations.





[4] Guniganti’s First Amended
Original Petition and Response to Plea in Intervention, filed after the trial
court granted partial summary judgment, is part of the appellate record.  His
motion to strike the intervention is not.





[5] As recited in the order
granting the motion for partial summary judgment, Guniganti represented in his
brief and in open court that he had abandoned his claim for foreclosure.  In
the partial summary judgment order, the court ordered his claim for foreclosure
on the Note and Deed of Trust abandoned.  Guniganti’s first amended petition, filed
a week after the partial summary judgment order, contains only a claim for
damages for 40% of the unpaid balance on the Note.





[6] Appellees’ plea in
intervention and motion for partial summary judgment also were not part of the
appellate record initially, but were merely included in the appendix to
Guniganti’s brief.  We may not consider a document attached as an appendix to a
brief and must consider a case based upon the record filed.  Nabelek v.
Dist. Att’y of Harris County, 290 S.W.3d 222, 232 n.11 (Tex. App.—Houston
[14th Dist.] 2005, pet. denied).  Both Guniganti and appellees cited to these
appendix documents.  On this court’s order, the clerk of the district court
supplemented the appellate record with the plea in intervention and motion for
partial summary judgment.  See Tex. R. App. P. 34.5(c)(1).

 

 





[7] We read the Note together
with the Modification and the Transfer.  See Tex. Bus. & Com. Code §
3.117 (regarding other agreements affecting instrument); CA Partners v.
Spears, 274 S.W. 3d 51, 66 n.9 (Tex. Civ. App.—Houston [14th Dist.] 2008,
pet. denied) (“The general rule is that separate documents executed at the same
time, for the same purpose, and in the course of the same transaction are to be
considered as one instrument, and are to be read and construed together.”); Mann
v. Perry, 486 S.W.2d 853, 859 (Tex. Civ. App.—Houston [14th Dist.] 1972, no
writ).  That we read them together does not, however, mean that we consider
them a single instrument.  There is nothing to indicate the Modification was affixed
to the Note, and Omni Bank’s endorsement to Guniganti and appellees appears
only on the Note.  See Bankers Trust (Delaware) v. 236 Beltway Inv., 865
F. Supp. 1186, 1192 (E.D. Va. 1994) (mem. op.) (refusing to incorporate even an
affixed allonge—which eliminated a variable rate interest in favor of a fixed
rate—into a note in order to furnish negotiability).





[8] Although the official UCC
comments following the code provisions are not law, they are persuasive
authority concerning interpretation of the statutory language.  Fetter v.
Wells Fargo Bank Texas, N.A., 110 S.W.3d 683, 687 (Tex. App.—Houston [14th
Dist.] 2003, no pet.).





[9] The preceding were all
securing the Modification.





[10] The “Stated Rate” was
defined as a floating interest rate equal to 1.5% “in excess of the Prime
Interest Rate,” meaning the prime interest rate of Bank One Texas.





[11] The “Maximum Rate” was
defined as “the highest rate of interest permitted by applicable law.” 





[12] Emphasis added.





[13] The Bank’s endorsement
to Guniganti and appellees on the Note refers to “the Note, Deed of Trust as
modified,” thus indicating it was necessary to examine the Modification to
determine one’s rights with respect to payment.





[14] The trial court analyzed
the Note and the Modification separately and then analyzed the Note as amended
by the Modification.  In reasoning that the Note as amended by the Modification
was not a negotiable instrument because it was not a single signed writing, the
court observed, “The UCC contemplates that each negotiable instrument be ‘a
signed writing.’”  Quoting Tex. Bus. & Com. Code § 3.104 cmt. 1 (emphasis
supplied by trial court).  This argument was not in appellees’ motion.





[15] In Mortgage
Electronic Registration Systems, Inc. v. Groves, we observed that courts
have used the term “suit to quiet title” to refer to the following two types of
legal disputes:  those regarding title to and possession of real property
(trespass to try title suits) and those regarding “the validity of other
‘clouds’ on an undisputed owner’s title to real property.”  No. 14-10-00090-CV,
2011 WL 1364070, at *3 (Tex. App.—Houston [14th Dist] April 12, 2011, no pet.
h.) (mem. op.).  We classified both Max Duncan and Southwest Guaranty
as the second type of dispute.  Id.  We held Grove’s claim was not in
the nature of a trespass to try title action, but did not decide whether that
classification rendered the declaratory judgment inappropriate.  Id. at
*4.





[16] The record contains an
abatement order indicating at least some of the parties were involved in other
litigation against each other.