**MAX DUNCAN FAMILY INVESTMENTS, LTD.,**
Appellant,

v.

**NTFN INC., and Morningside Property Co.,** Appellees.

No. 05–07–00430–CV.

Court of Appeals of Texas, Dallas.

Aug. 26, 2008.

Rehearing Overruled Nov. 6, 2008.

Perry J. Cockerell, Randall K. Price, Cantey & Hanger, LLP, Dallas, Stephen L. Tatum, Cantey & Hanger, L.L.P, Fort Worth, TX, for appellant.

M. Brett Johnson, Fish & Richardson, P.C., Nina Cortell, Anne M. Johnson, Jeremy D. Kernodle, Haynes & Boone, LLP, Dallas, TX, for appellee.

Before Justices WHITTINGTON, RICHTER, and MAZZANT.

## OPINION

Opinion by Justice RICHTER.

This case arises from misuse of corporate property to collateralize a personal

real estate transaction. The trial court granted a traditional summary judgment in favor of the corporate property owners, Morningside Property Co. ("Morningside") and NTFN Inc. ("NTFN") and awarded attorney's fees. In three issues, Max Duncan Family Investments, Ltd. (Duncan), the entity attempting to foreclose on the real estate lien, contends (1) Morningside and NTFN were not entitled to void the interested director transaction because the transaction fell within the exceptions enumerated in TEX. BUS. CORP. ACT ANN. art. 2.35-1 (Vernon 2003); (2) there were genuine issues of material fact under the holder in due course provisions of the Uniform Commercial Code; and (3) the trial court should not have awarded Morningside and NTFN their attorney's fees. For the reasons that follow, we affirm the trial court's judgment.

## BACKGROUND

Morningside is a Dallas-based company whose principal business is the ownership and operation of the Hamptons apartment complex (the Hamptons). NTFN, a company engaged in the business of originating home mortgages, is the sole shareholder of Morningside. Ken Ferrara, Charles Priest, and Murdock Richard are the three directors of NTFN. Ferrara is also the president and director of Morningside.

In 2002, Ferrara approached Priest and Richard about Morningside purchasing some undeveloped land offered for sale by Duncan in Kerr County, Texas. Priest and Richard unequivocally rejected the proposal and stated they wanted to focus solely on the home mortgage business of the company. Ferrara decided to make the purchase anyway.

In April 2002, Ferrara agreed to purchase the land from Duncan and executed an earnest money contract on behalf of Morningside and its assigns (the "Land Deal"). The Land Deal involved the purchase of five lots for the total purchase price of $1.5 million dollars. Ferrara obtained financing in his own name for all but $320,000 of the purchase price. Duncan agreed to finance the remaining $320,000. At closing, Ferrara executed a $320,000 promissory note payable to Duncan (the "Note"). Morningside was the payor on the Note, which was signed by Ferrara on behalf of Morningside. Ferrara pledged the Hamptons as security for the Note, as evidenced by a lien on a deed of trust (the "Lien"). The warranty deeds and titles for each of the five lots listed Ferrara as the buyer and new owner of the property. Priest and Richard were not aware that Morningside's property had been used to collateralize the Land Deal.

Throughout the negotiation and consummation of the Land Deal, Duncan dealt only with Ferrara. Duncan did not see or ask for any documentation establishing Ferrara had the authority to execute the Note on behalf of Morningside or pledge the Hamptons as collateral.

For the first two years following the Land Deal, Ferrara personally paid Duncan under the Note. But Ferrara defaulted in 2004. Rather than foreclose, Duncan agreed to take a second lien on the five lots. When the lots were subsequently foreclosed upon by another creditor of Ferrara's, Duncan began proceedings to foreclose on the Lien.

In July 2005, Duncan provided Morningside with a notice of foreclosure. Prior to receipt of the notice of foreclosure, no one at Morningside or NTFN was aware of the Land Deal. After receiving the notice of foreclosure, Morningside and NTFN initiated this action against Duncan. Morningside and NTFN requested injunctive relief to prevent foreclosure, a declaration that the Note and Lien were void, and costs

and attorney's fees. The foreclosure was enjoined pending trial.

On April 18, 2006, Morningside and NTFN filed a traditional motion for summary judgment claiming the Land Deal was void as an interested director transaction and the exceptions enumerated in Tex. Bus. Corp. Act Ann. art. 2.35–1(A)(1)–(3) (Vernon 2003) did not apply. Duncan replied on July 24, 2006 and argued the Land Deal was fair to the corporation under section (3) of the Business Corporation Act. For the first time in the lawsuit, Duncan also argued it was entitled to protection as a holder in due course under Tex. Bus. & Com.Code Ann. § 3.302 (Vernon 2002). The summary judgment hearing commenced on July 31, 2006 and was continued to August 4, 2006. Duncan amended its pleadings to assert the holder in due course defense on August 3, 2006.

During the summary judgment hearing, the trial judge expressed concern about the fact that the summary judgment did not address the recently-asserted holder in due course defense.[1] On August 8, 2006, Morningside and NTFN filed a document entitled "Plaintiffs' First Amended Motion for Summary Judgment" (the "Motion"). In the Motion, Morningside and NTFN argued the Land Deal was void as an interested director transaction and Duncan was not entitled to holder in due course protection. The Motion also included the argument that Duncan's counterclaim for payment on the Note was the mirror image of plaintiffs' declaratory judgment claim, and granting the motion for summary judgment would dispose of the counterclaim. Morningside and NTFN re-filed the original brief and evidence supporting the original motion for summary judgment and also filed a supplemental brief on the holder in due course issue. Duncan's re-

sponse to the Motion only addressed the holder in due course issue and did not incorporate or otherwise reference the response to or evidence in support of the original motion for summary judgment. On September 19, 2006, the trial court granted summary judgment on behalf of Morningside and NTFN. On February 20, 2007, following a bench trial on the issue of attorney's fees, the court made findings of fact and conclusions of law and awarded attorney's fees to Morningside and NTFN. On March 30, 2007, Duncan filed a motion for new trial and for remittitur. On June 11, 2007, the trial judge signed a second amended final judgment in favor of NTFN and Morningside. The final judgment provides that the Lien, Note, and deed of trust conveying the property are void and unenforceable, that Duncan take nothing on its counterclaim, and awards NTFN and Morningside costs and attorney's fees. This appeal followed.

### DISCUSSION

### *Standard of Review*

The standard for reviewing a traditional motion for summary judgment is well-established. *See Sysco Food Servs. v. Trapnell,* 890 S.W.2d 796, 800 (Tex.1994); *Nixon v. Mr. Prop. Mgmt. Co.,* 690 S.W.2d 546, 548–49 (Tex.1985). We review a summary judgment de novo to determine whether a party's right to prevail is established as a matter of law. *Dickey v. Club Corp.,* 12 S.W.3d 172, 175 (Tex.App.-Dallas 2000, pet. denied). A party moving for traditional summary judgment is charged with the burden to establish that there are no genuine issues of material fact and it is entitled to judgment as a matter of law. Tex.R. Civ. P. 166a(c); *M.D. Anderson Hosp. & Tumor Inst. v. Willrich,* 28

---

1. Both parties refer to a ruling by the court on the original motion for summary judg-

ment, but there is no order evidencing a ruling in the record.

S.W.3d 22, 23 (Tex.2000) (per curiam). A matter is conclusively established if ordinary minds could not differ as to the conclusion to be drawn from the evidence. *Triton Oil & Gas Corp. v. Marine Contractors & Supply, Inc.,* 644 S.W.2d 443, 446 (Tex.1982). When the trial court's order granting summary judgment does not specify the grounds upon which it was granted, we will affirm the judgment if any of the theories advanced are meritorious. *Carr v. Brasher,* 776 S.W.2d 567, 567 (Tex. 1989).

### The Interested Director Transaction

Duncan asserts the trial court should not have granted summary judgment because there were disputed facts raised by its defenses under TEX. BUS. CORP. ACT ANN. art. 2.35–1 (Vernon 2002). The Texas Business Corporation Act sets out limited circumstances where interested director transactions are allowed, and provides in pertinent part:

> An **otherwise valid contract** or transaction between **a corporation and one or more of its directors** or officers or **between a corporation and any other** domestic or foreign **corporation** or other entity **in which one or more of its directors or officers are directors or officers or have a financial interest** shall be valid notwithstanding whether the director or officer is present or participates in the meeting of the board or committee ... which authorizes the contract or transaction, or solely because his or their votes are counted for such purpose, if any one of the following is satisfied:

> (1) The material facts as to his relationship or interest and as to the contract or transaction are disclosed or are known to the board of directors or committee, and the board or committee in good faith authorizes the transaction ...; or

> (2) The material facts as to his relationship or interest and as to the contract or transaction are disclosed or are known to the shareholders entitled to vote thereon, and the contract or transaction is specifically approved in good faith by vote of the shareholders; or

> (3) The contract or transaction is fair as to the corporation as of the time it is authorized, approved, or ratified by the board of directors, a committee thereof, or the shareholders.

*See* TEX. BUS. CORP. ACT ANN. art. 2.35–1(A)(1)–(3) (Vernon 2002) (emphasis added). Duncan maintains each of the exceptions set forth in subsections (1), (2), and (3) of the statute are applicable here. In response, Morningside and NTFN contend Duncan failed to raise sections (1) and (2) in any response to summary judgment, and failed to brief an argument concerning section (2) on appeal. Consequently, Morningside and NTFN contend the arguments Duncan seeks to advance under article 2.35–1(1) and (2) have not been preserved for our review.

■ We need not reach Morningside and NTFN's waiver arguments because even if Duncan had properly preserved its argument, on its face, article 2.35–1 has no application in the instant case. The statute may be applied in two circumstances; when there is a transaction between a corporation and one or more of its officers and directors, or when there is a transaction between a corporation and another entity in which one or more of the officers or directors act as such for both entities. *See* TEX. BUS. CORP. ACT ANN. art. 2.35–1(A) (Vernon 2002). Neither of these two circumstances are present here. Ferrara is not an officer or director of Duncan, the entity engaged in the Land Deal with

Morningside. There was no transaction between Ferrara and Morningside. In addition, there is no evidence that the Land Deal was "otherwise valid." Therefore, TEX. BUS. CORP. ACT ANN. art. 2.35–1(A) (Vernon 2002) does not apply to the facts presented in this case. Duncan's first issue is overruled.

*Holder In Due Course*

In its second issue, Duncan contends the trial court erred in granting summary judgment because it is a holder in due course. NTFN and Morningside respond that Duncan is not a holder in due course because it is the payee of the Note. NTFN and Morningside further assert that Duncan is not afforded the protection of a holder in due course because Duncan had notice Ferrara was breaching his fiduciary duty to Morningside.

The protections bestowed on those who qualify for holder in due course status are intended to safeguard innocent holders who acquire an instrument without prior knowledge of any problems or defenses. *See* TEX. BUS. & COM. CODE ANN. § 3.302 (Vernon 2002). An "instrument" means a negotiable instrument. TEX. BUS. & COM. CODE ANN. § 3.104(b) (Vernon 2002). A negotiable instrument is "an unconditional promise or order to pay a fixed amount of money." TEX. BUS. & COM. CODE ANN. § 3.104(a) (Vernon 2002). Thus, the Note in this case is an instrument.[2] Duncan is a holder. *See* TEX. BUS. & COM. CODE ANN. § 1.201(21) (Vernon Supp.2008).

■ The holder of an instrument is a holder in due course if the holder takes the instrument: (1) for value; (2) in good faith; and (3) without notice of any claim or defense to the instrument. TEX. BUS. & COM. CODE ANN § 3.302 (Vernon

2002). The basic philosophy of the holder in due course status is to "encourage free negotiability of commercial paper by removing certain anxieties of one who takes the paper as an innocent purchaser knowing no reason why the paper is not as sound as its face would indicate." *First Nat. Acceptance Co. v. Bishop*, 187 S.W.3d 710, 715 (Tex.App.-Corpus Christi 2006, no pet.) (*citing Unico v. Owen*, 50 N.J. 101, 232 A.2d 405, 410 (1967)). A holder is presumed to be a holder in due course unless there is evidence to the contrary. *Williams v. Stansbury*, 649 S.W.2d 293, 295 (Tex.1983).

Although the use of the holder in due course doctrine usually involves a transferee of the payee of the instrument, the payee of an instrument can be a holder in due course. *See* TEX. BUS. & COM. CODE ANN. § 3.302 cmt. 4 (Vernon 2002). Thus, we turn to whether Duncan took the Note with notice of a claim or defense.

■ A person has "notice of a fact" when, from all the facts and circumstances known to him at the time in question, he has reason to know it exists. *See* TEX. BUS. & COM. CODE ANN. § 1.202(a) (Vernon Supp.2008). TEX. BUS. & COM. CODE ANN § 3.307 provides in pertinent part:

> If an instrument is issued by the represented person or the fiduciary as such, to the taker as payee, the taker has notice of the breach of fiduciary duty if the instrument is:
>
> taken in payment of or as security for a debt known by the taker to be the personal debt of the fiduciary;
>
> taken in a transaction known by the taker to be for the personal benefit of

---

**2.** The Lien, however, is not an instrument.

the fiduciary. . . . [3]

TEX. BUS. & COM. CODE ANN § 3.307(b)(4)(A)-(B) (Vernon 2002). The summary judgment evidence establishes Duncan knew Ferrara was a fiduciary of Morningside. Morningside was the payor of the Note. Although Duncan knew Ferrara was the president of Morningside, he did not see or request any documentation to establish Ferrara had authority to pledge the corporate property as collateral. The summary judgment evidence also establishes Duncan was aware the Morningside Note was personal debt of Ferrara or for the personal benefit of Ferrera. Duncan sold the land to Ferrara personally. Ferrara obtained financing in his own name for all but $320,000 of the purchase price and executed the Note on behalf of Morningside for the remaining $320,000. Duncan acknowledged the warranty deeds and titles for each of the five lots listed Ferrara as the buyer and new owner of the property. For the first two years after the Land Deal closed, Ferrara personally paid Duncan under the Note.

Duncan describes numerous details about Ferrara's relationship with NTFN that are not pertinent to our inquiry here and argues he was unaware of the details of this relationship. Duncan also maintains no one brought the breach of fiduciary duty to his attention at the time of the Land Deal. We are not persuaded by these arguments. The summary judgment evidence establishes Duncan had notice of Ferrara's breach of his fiduciary duty to Morningside. Consequently, Duncan was not entitled to holder in due course status

as a matter of law. Duncan's second issue is overruled.

*Attorney's Fees*

1. Were Fees Properly Recoverable?

In its third issue, Duncan argues the trial court erred in awarding court costs and attorney's fees. Duncan first argues fees should not have been awarded because the action is one to remove cloud on title or quiet title.[4] *See Martin v. Amerman,* 133 S.W.3d 262, 267 (Tex.2004) (trespass to try title suits governed exclusively by the Texas Property Code). To advance its argument, Duncan relies on *Southwest Gty. Trust Co. v. Hardy Rd. 13.4 Jt. Venture,* 981 S.W.2d 951 (Tex.App.-Houston [1st Dist.] 1998, pet. denied). This reliance is misplaced. The *Southwest Gty.* case involved a party seeking only a declaration that a lien on its property was invalid and a quieting of title. Because the suit for declaratory judgment was no more than a suit to quiet title, the court concluded attorney's fees were not properly recoverable. *See Id.* at 957.

■■■ Here, NTFN and Morningside brought a declaratory judgment action to invalidate the Note and the lien securing the Note. The Uniform Declaratory Judgment Act ("UDJA") permits a party to bring a declaratory judgment action to invalidate a real estate note, as well as any lien securing the note. *See* TEX. CIV. PRAC. & REM CODE ANN. § 37.004(a) (Vernon 2002). The UDJA also provides that in any proceeding under the act a court may award costs and reasonable attorney's fees as are equitable and just.

---

**3.** "Fiduciary" is defined as "an agent, trustee, partner, corporate officer or director, or other representative owing a fiduciary duty with respect to the instrument." TEX. BUS. & COM. CODE ANN § 3.307(a)(1) (Vernon 2002). A "represented person" includes the principal, beneficiary, partnership, corporation, or other person to whom the duty . . . is

owed. TEX. BUS. & COM. CODE ANN § 3.307(a)(2) (Vernon 2002).

**4.** Duncan also asserts for the first time on appeal that the fees were not segregated. This issue has been waived. *See Green Int'l v. Solis,* 951 S.W.2d 384, 389 (Tex.1997).

*See* TEX. CIV. PRAC. & REM.CODE ANN. § 37.009 (Vernon 2002). The trial court's decision concerning the grant or denial of attorney's fees in a declaratory judgment action will not be reversed on appeal absent a clear showing of an abuse of discretion. *Knighton v. Int'l Bus. Mach. Corp.*, 856 S.W.2d 206, 210 (Tex. App.-Houston [1st Dist.] 1993, writ denied). This action involves more than just title and possession of real property; the action concerns the validity of a real estate lien note. Therefore, the action may be brought under the UDJA and costs and attorney's fees may be recovered. *See Shankles v. Shankles*, 195 S.W.3d 884, 885–86 (Tex.App.-Dallas 2006, no pet.). Under the circumstances of this case, we cannot conclude the trial court abused its discretion in awarding Morningside and NTFN costs and attorney's fees.

## 2. Were the Fees Reasonable and Necessary?

The trial court found NTFN and Morningside reasonably and necessarily incurred attorney's fees in the amount of $431,411 through trial. The court further found fees in the amount of $60,000 would be incurred in an appeal to this court, and an additional $25,000 would be incurred in an appeal to the Texas Supreme Court. Duncan argues the trial court erred in awarding these fees because they are excessive. We disagree.

The question whether a fee award is reasonable and necessary is a fact question to be decided after hearing all of the evidence. *See Bocquet v. Herring,* 972 S.W.2d 19, 21 (Tex.1998). We affirm the fact finding unless "it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust." *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986) (per curium). The trial court's findings state the court found the Arthur Anderson fac-

tors supported the amount of fees awarded as reasonable and necessary. *See Arthur Andersen & Co. v. Perry Equip. Corp.,* 945 S.W.2d 812, 818 (Tex.1997); TEX. DISCIPLINARY R. PROF CONDUCT 1.04. The court also found the case was pursued in a reasonably cost-efficient manner. Further, Morningside and NTFN prevailed on their declaratory judgment claim. The case involved extensive briefing and discovery over a two-year period. In a bench trial lasting nearly three days, the court heard hours of testimony from fact and expert witnesses and received multiple exhibits into evidence. Based on our review of the record, we cannot conclude the trial court abused its discretion in awarding attorney's fees. Duncan's third issue is overruled. Having resolved all of Duncan's issues against it, we affirm the trial court's judgment.