

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-19-00363-CV
_____

TUWANA S. GILDON, Appellant

V.

ARVM 5, LLC, Appellee

On Appeal from the 141st District Court
Tarrant County, Texas
Trial Court No. 141-308314-19

Before Gabriel, Kerr, and Bassel, JJ.
Memorandum Opinion by Justice Bassel

## MEMORANDUM OPINION

## I. Introduction

Appellant Tuwana S. Gildon, who appeared pro se in the trial court and is acting pro se here, appeals a take-nothing judgment entered after a bench trial. The trial court heard Appellant's quiet-title claim that she brought against the purchaser of her home at a foreclosure sale. Appellant's brief contains no specific issue attacking the judgment. We will construe Appellant's brief as contending that the evidence established as a matter of law that the trial court should have granted judgment for her or that the great weight and preponderance of the evidence is against the findings that are implied to support the judgment. We hold that the trial court did not err by entering a take-nothing judgment because the record does not establish that the lien that was foreclosed was invalid. Accordingly, we affirm.

## II. The Standards that We Apply to Determine What Issues Appellant's Brief Raises

Appellant's brief contains no citations to the record or to authority that is either binding or persuasive and references a number of matters that are outside the record. We recognize that Appellant is not a lawyer and is unfamiliar with the trial and appellate process. We will liberally construe the arguments in Appellant's brief to determine the nature of her challenge to the judgment entered by the trial court.[1]

---

[1]A San Antonio Court of Appeals opinion that was recently affirmed by the Texas Supreme Court explained the efforts we should make to focus a generalized attack on the findings supporting a judgment in a nonjury case:

Though we will liberally review her brief to glean the issues that Appellant raises, we are constrained by other rules in how far we may go in this effort. We must hold pro se litigants to the same standards as we hold licensed attorneys, and we may not become an advocate for a party by searching the record for unassigned error, even if we perceive the ends of justice require such search. *See Rahman v. Discover Bank*, No. 02-19-00182-CV, 2020 WL 2202450, at \*2 (Tex. App.—Fort Worth May 7, 2020, no pet.) (per curiam) (mem. op.).

### III.  Issues Raised in Appellant's Brief that We Cannot Consider

Appellant's brief attempts to raise several issues that we cannot review. First, Appellant's brief has a section titled "infliction of spiritual, [emotional], physical,

---

"A party appealing from a nonjury trial in which the trial court made findings of fact and conclusions of law should direct his attack on the sufficiency of the evidence at specific findings of fact, rather than at the judgment as a whole." *Shaw v. [Cty.] of Dallas*, 251 S.W.3d 165, 169 (Tex. App.—Dallas 2008, pet. denied); *Levine v. Maverick [Cty.] Water Control & Improvement Dist. No. 1*, 884 S.W.2d 790, 796 (Tex. App.—San Antonio 1994, writ denied). Nevertheless, a challenge to an unidentified finding of fact may be sufficient if the reviewing court—after giving consideration to the number of findings, the nature of the case, and the underlying elements of the applicable legal theories—can fairly determine from the argument the specific finding being challenged. *Shaw*, 251 S.W.3d at 169 (citing *Tittizer v. Union Gas Corp.*, 171 S.W.3d 857, 863 (Tex. 2005) (per curiam) (holding points of error should be liberally construed to fairly and equitably adjudicate rights of litigants, and reviewing court should consider parties' arguments supporting each point of error and not merely wording of points)); *In re Estate of Bessire*, 399 S.W.3d 642, 649 (Tex. App.—Amarillo 2013, pet. denied).

*Teal Trading & Dev., LP v. Champee Springs Ranches Prop. Owners Ass'n,* 534 S.W.3d 558, 581–82 (Tex. App.—San Antonio 2017), *aff'd*, 593 S.W.3d 324 (Tex. 2020).

3

mental, [and] financial distress." Appellant's live pleading in the trial court appears to be the one titled "Amendment: Action for quiet title." That pleading has no claim for the intentional infliction of emotional distress. *See Hersh v. Tatum*, 526 S.W.3d 462, 468 (Tex. 2017) (stating elements of cause of action for intentional infliction of emotional distress). Nor does Appellant's pleading seek damages for the infliction of distress. It is axiomatic that we cannot review a claim not raised in the trial court. *See Mitchell v. Bank of Am., N.A.*, 156 S.W.3d 622, 630 (Tex. App.—Dallas 2004, pet. denied) ("As a rule, a claim, including a constitutional claim, must first be raised in the trial court in order for it to be considered on appeal." (citing Tex. R. App. P. 33.1(a), and *Dreyer v. Greene*, 871 S.W.2d 697, 698 (Tex. 1993))).

Next, Appellant asserts in her brief that counsel for Appellee (who was the purchaser at the foreclosure sale) has a conflict of interest because he and his firm were joined as defendants in a suit that Appellant brought in federal court. Appellant apparently sued counsel and his firm because of their legal representation of the party holding title to the property at issue. A mention was made during trial of the fact that Appellee's counsel and his firm were parties to a federal suit. The record, however, contains no motion to disqualify counsel; thus, any complaint that Appellee's counsel should be disqualified is waived. *See In re George*, 28 S.W.3d 511, 513 (Tex. 2000) (orig. proceeding) ("As a rule, '[a] party who fails to file its motion to disqualify opposing counsel in a timely manner waives the complaint.'" (quoting *Vaughan v. Walther*, 875 S.W.2d 690, 690 (Tex. 1994))).

4

Finally, Appellant claims that the trial judge had a conflict of interest because he signed a proposed judgment submitted by Appellee's counsel. Appellant filed no motion to recuse the trial judge; thus, her complaint is waived. *See Sparkman v. Microsoft Corp.*, No. 12-13-00175-CV, 2015 WL 1244538, at *3 (Tex. App.—Tyler Mar. 18, 2015, pet. denied) (mem. op.) (concluding that appellant failed to preserve error concerning any bias or prejudice on the part of the judge because appellant did not file a motion to recuse). Further, signing a proposed order submitted by a party is not a ground for recusal. *See* Tex. R. Civ. P. 18b(b).

## IV. Factual and Procedural Background

The controversy here revolves around the foreclosure on Appellant's home (hereinafter the Property). In essence, Appellant claims that there was no existing lien on the Property at the time of the foreclosure because a lien created by a deed of trust when she purchased the Property in 2011 had been released. The complication that Appellant's argument must face is that the record contains two deeds of trust: the one filed in 2011 (the 2011 Deed of Trust), and another filed in 2015 (the 2015 Deed of Trust).

The triggering event for the litigation was a 2019 foreclosure of the 2015 Deed of Trust. Subsequently, an eviction proceeding was filed in Tarrant County in the justice court, and the judgment evicting Appellant from the Property that was rendered by the justice court was appealed to the county court at law. The judgment of the county court at law was not appealed any further.

5

Appellant then filed a suit in federal court for wrongful foreclosure against various parties, including the holder of the 2015 Deed of Trust that foreclosed in 2019, the purchaser at the foreclosure sale (Appellee in this appeal), the substitute trustee conducting the foreclosure sale, and the legal counsel representing the purchaser. After filing the federal suit, Appellant filed the proceeding below in the 141st District Court of Tarrant County (hereinafter the trial court) to quiet title. At the time of the trial, the federal suit had been dismissed, and Appellant had appealed the order of dismissal to the Fifth Circuit Court of Appeals.

In her live pleading in the trial court, Appellant again sued Appellee and added as defendants County Court at Law Number One of Tarrant County and the Constable of Precinct Number Three of Tarrant County. The live pleading referenced a number of factual matters. But Appellant's claim primarily asserted that the 2011 Deed of Trust (which Appellant acknowledged created a lien against the Property) was released by a document filed of record. She also referenced correspondence that suggested to Appellant that no lien burdened her property.

Appellant's live pleading stated that "[t]he objective of this action is to quiet any claims to the title of the property, arising out of the mortgage agreement dated the 16th day of December[] 2011, now rescinded, by equitable estoppel, res judicata, on the grounds of false representation[] and fraud." The pleading sought the following relief:

6

Should the defendants fail to come forth to assert a bona[ ]fide claim, I petition the court for an order canceling any instrument in regards to the ASSIGNMENT OF MORTGAGE or sale of property, as well as any other such instrument of the Trustee's Deed which casts a cloud over the Petitioner[']s Title, and[/]or any other order that the court deems sufficient to accomplish the objective of quieting all claims to the Petitioner's Title.

The assignment referenced in the quoted paragraph is apparently to an assignment of the 2015 Deed of Trust.

When Appellant filed this action, she sought, and the trial court granted, a temporary restraining order. The TRO ordered the purchaser at the foreclosure sale and the Tarrant County Constables "forthwith to desist and refrain from attempting . . . to execute or executing on any Writ of Possession to be issued from any judgment until application for temporary injunction in this cause is heard by this Court or until further order of this Court."

The TRO set a temporary-injunction hearing that the trial court subsequently held. After this hearing, the trial court denied Appellant's request for a temporary injunction. But at that hearing, several documents were admitted into evidence; we set forth a description of those documents because they will be a part of our evidentiary analysis.

Appellant introduced the release of the 2011 Deed of Trust that is the focus of her quiet-title claim; correspondence that referenced the address of the Property and stated, "Congratulations, your loan is fully paid off"; correspondence from Freedom Mortgage Corporation (the beneficiary of the 2015 Deed of Trust) that stated in

7

response to an inquiry, "After reviewing your account, our research determines we are unable to determine why this was received as the loan was service released on February 16, 2016"; and a note executed in 2011 when Appellant purchased the Property.

At the temporary-injunction hearing, Appellee introduced seven exhibits that impacted the title to the Property. The chronology and substance of the title documents is as follows:

- Defendant's Exhibit 1: The 2011 Deed of Trust that was filed of record on December 29, 2011, and listed its beneficiary as Mortgage Electronic Registration Systems, Inc. as nominee for Bank of America, N.A. (this deed secured the note that Appellant signed to finance her purchase of the Property and is the deed that Appellant primarily attacked)

- Defendant's Exhibit 2: A Special Warranty Deed conveying the Property to Appellant

- Defendant's Exhibit 3: The 2015 Deed of Trust filed of record on December 29, 2015, which listed the lender as Freedom Mortgage Corporation

  This deed of trust recited that it secured

  > [t]he promissory note signed by Borrower [defined using Appellant's name] and dated December 21, 2015. The Note states that Borrower owes Lender One Hundred Four Thousand Sixty[-]Seven and 00/100 Dollars (U.S. $104,067[.]00)[,] plus interest[.] Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than January 1, 2046[.]

A Renewal and Extension Rider to this Deed of Trust recited that it was in renewal of the indebtedness entered into by Appellant in 2011 and referenced the

8

document filing number of the 2011 Deed of Trust. The rider provided,

> This Renewal and Extension Rider is incorporated into and shall amend and supplement the Security Instrument of even date herewith[.] The Note is in renewal and extension, but not in extinguishment, of the indebtedness, whether one or more, described as follows
>
>> Original Note to MERS, INC[.] AS NOMINEE FOR BANK OF AMERICA, N.A.
>>
>> Amount $112,253[.]00 on December 16, 2011
>>
>> Recorded in INSTRUMENT NO[.] D211313803 [the filing number for the 2011 Deed of Trust] in TARRANT County, Texas
>>
>> EXECUTED BY TUWANA S[.] GILDON, A SINGLE PERSON
>>
>> Lender is expressly subrogated to all rights, liens, equities[,] and remedies securing the original holder(s) of the above debt(s) and the original lien(s) securing the same are renewed and extended to the date of maturity of the Note secured by the Security Instrument in renewal and extension of the indebtedness[.] Borrower acknowledges that the lien(s) securing the prior debt(s) is valid, that the lien(s) subsists against the Property, and that by this instrument it is renewed and extended in full force until the Note is paid, even though the original lien(s) is released and not assigned to Lender[.]

- Defendant's Exhibit 4: Release of the 2011 Deed of Trust filed of record on February 1, 2016

- Defendant's Exhibit 5: Corporate Assignment of Deed of Trust from Freedom Mortgage Corporation to Nationstar Mortgage LLC that assigned the 2015 Deed of Trust

- Defendant's Exhibit 6: Appointment of Substitute Trustee for the 2015 Deed of Trust

9

- Defendant's Exhibit 7: Substitute Trustee's Deed resulting from the foreclosure of the 2015 Deed of Trust by which Nationstar conveyed the property to ARVM 5, LLC—Appellee in this appeal

Several months after the hearing on the temporary injunction, the trial court held a bench trial. We will do our best to portray what occurred at the trial as it was a jumble of testimony, argument, and references to documents attached to pleadings or exhibits that were introduced during the prior temporary-injunction hearing.

At the start of the trial, Appellant nonsuited her claims against County Court at Law Number One and the Constable.[2] The nonsuit left Appellee as the sole defendant.

After dismissing the County Court at Law Number One and the Constable, Appellant stated that she was not ready for trial. But Appellant did not seek a continuance, and the discussion immediately diverged to the discussion of a wrongful foreclosure suit that Appellant had filed in federal court and that was on appeal. Appellant indicated that she was also suing Appellee in the federal court suit, and Appellee's counsel described the other defendants in that suit. Appellant distinguished the suit in federal court as being for wrongful foreclosure and the one in the trial court as being one to quiet title. Appellant indicated that she would go forward with the trial on her quiet-title claim.

---

[2]Though no written order was entered with respect to the nonsuit, none was necessary. *See Epps v. Fowler*, 351 S.W.3d 862, 868 (Tex. 2011) ("In Texas, plaintiffs may nonsuit at any time before introducing all of their evidence other than rebuttal evidence. Tex. R. Civ. P. 162. No court order is required. *Id.*; *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010).").

After this discussion of what would be heard, the trial court swore in Appellant as a witness, and she was the sole witness at the trial. It appears that Appellant contended that any lien against the Property had been released. It then appears from a rather nebulous discussion between the trial court, Appellant, and counsel for Appellee that the basis for this contention was a release of lien attached to Appellant's pleading. This release appears to be the same release that Appellant had introduced as Exhibit E at the temporary-injunction hearing and that Appellee had introduced as Defendant's Exhibit 4. As part of the ongoing back-and-forth discussion that occurred throughout the trial, Appellee's counsel pointed out to the trial court that the release referenced only the 2011 Deed of Trust.

Appellant then challenged whether Nationstar, the party that had foreclosed, had the right to do so. According to Appellant,

> So whenever I guess Nationstar was supposedly taking over, we had literally no contract. They had no grounds to foreclose on my real property. They're not a bank. They are a collection agency, which goes back to them not having the -- because they didn't own that note, my note was with Bank of America, they couldn't take my home in that foreclosure.
>
> And although the foreclosure was fraudulent because it was after the property was services rendered satisfied[,] I sent letters to Nationstar asking them to send me proof of original -- originality of the contract that we had. They had none.
>
> I had asked them to send me proof of this, and they have none. They have not -- I have asked them to -- I have sent them information letting them know about violating my consumer rights. They did not respond to that. I put it in a police report[,] and I put in an SDI report for identity theft. I contacted [the] FDC for identity theft.

11

The district court then inquired why Appellant was suing Appellee (the purchaser at the foreclosure sale) rather than Nationstar, the party that actually foreclosed. She stated that Appellee knew it was a "fraudulent situation." Appellant claimed that she had conveyed this knowledge to Appellee's counsel after the foreclosure during a conversation at the eviction proceeding in the county court at law.

As the testimony continued, the trial court asked Appellant again why she was suing Appellee; she responded, "Because I need my property. My thing is we have an understanding that this is my real property. They should be going after Nationstar to get their money back from Nationstar."

Another confusing discussion ensued during which the trial court tried to determine the status of the liens against the property. Appellee's counsel then attempted to explain the various documents filed of record that impacted title; such documents apparently were the ones introduced as Appellee's exhibits at the temporary-injunction hearing. Counsel highlighted that two deeds of trust existed—the 2011 Deed of Trust and the 2015 Deed of Trust.

In response to counsel's statements, Appellant challenged that there had ever been a "second mortgage" on the property. Appellee's counsel then referenced Defendant's Exhibit 3, which was the 2015 Deed of Trust that had been introduced during the temporary-injunction hearing. Appellant responded by apparently referring to a statement that she had made during the temporary-injunction hearing, which was

that "[t]his is the one I told you that I need the originals because I wasn't able to say if it was my signature or not."

Asked by the trial court if she had any additional information to present, Appellant referenced two exhibits to her pleading: (1) a letter from an unknown source that said, "Congratulations, your loan is fully paid off" (this letter was admitted into evidence during the temporary-injunction hearing), and (2) the letter from Freedom Mortgage (the beneficiary mortgagee in the 2015 Deed of Trust that had assigned its lien to the party that actually foreclosed) saying that "service" had been released on the loan. As the trial swung between argument and evidence, Appellee's counsel challenged whether the exhibits referenced by Appellant supported her conclusion that no lien encumbered the Property, that the 2015 Deed of Trust had been released, and that the note representing the loan for the purchase of the Property had been paid.

The trial court then asked additional questions about the assignment of the 2015 Deed of Trust from the original beneficiary, Freedom Mortgage, to the party that foreclosed. The discussion then bounced back to Appellee's counsel, pointing out again that the release Appellant relied on referenced only the 2011 Deed of Trust and not the 2015 Deed of Trust that was foreclosed.

In response to this statement, Appellant argued that it was a breach of the contract to transfer any lien on the Property because

13

the property should have never been in foreclosure. This property was - - the note and the mortgage were separate. Once the note - - once the mortgage was traded off to whatever, however they do it, it broke that contract, and with that contract, the note covers my real property, not the mortgage. The mortgage is separate. I never signed a contract. My contract was with Bank of America. It was never with Nationstar to use my home as collateral. They have no paperwork.

Then another discussion by Appellee's counsel ensued. He again refenced the deed of trust introduced as Defendant's Exhibit 3 during the temporary-injunction hearing and explained its various references to the fact that it was in renewal and extension of the debt existing on the Property in the form of the note that Appellant had executed in 2011. Counsel again emphasized that the release of lien relied on by Appellant released the 2011 Deed of Trust and noted that the correspondence that Appellant had introduced from the beneficiary of the 2015 Deed of Trust stated only that it was no longer servicing the loan, not that the lien had been released.

Appellant then acknowledged that she had been making payments before foreclosure to Nationstar, the assignee of the 2015 Deed of Trust. Though she made the payments to Nationstar (the party that was assigned the 2015 Deed of Trust and foreclosed on it), she did not review any documents regarding why it was the appropriate entity to pay.

The trial court then inquired whether Appellant had a release of the lien held by Nationstar—the 2015 Deed of Trust. Appellant responded that Nationstar did not have a lien. When asked why she had made payments to Nationstar, she responded that a letter from the payee on the note that she had executed for the purchase of the

14

Property had directed her to send payment to Nationstar. When the trial court again noted that the release of lien relied on by Appellant did not refence Nationstar, she contended that she had spoken to the "secretary of state" and that there was no lien under her name shown against the Property.

The trial ended with the trial court asking if Appellant was contending that she had fully paid the note financing the purchase of the Property. Appellant responded yes. The trial court then pointed out that the note (presumably the one attached as an exhibit to Appellant's pleading) had a maturity date of 2042. The trial court asked if Appellant had made a lump-sum payment on the note and whether she had a check showing the payment. Appellant stated that her electronic "signature was considered payment for paid in full, the promissory note."

After the trial court confirmed that Appellant had no more evidence to present, the trial court denied Appellant relief and orally rendered judgment for Appellee.

The trial court signed a judgment reciting that it had considered "the pleading[s] and official records on file in this cause." The judgment decreed,

> IT IS THEREFORE, ORDERED, ADJUDGED, and DECREED, that ARVM 5, LLC is entitled to a judgment, pursuant to Texas law.

> IT IS FURTHER ORDERED, ADJUDGED, and DECREED, that Plaintiff Tuwana S. Gildon take nothing on all claims alleged, or which could have been alleged against ARVM 5, LLC.

## V. Standard of Review

As noted, we construe Appellant's issue on appeal as raising a legal-sufficiency challenge that she was entitled to recover as a matter of law on her quiet-title claim and a factual-sufficiency challenge that the findings supporting the judgment were against the great weight and preponderance of the evidence.

Appellant did not request findings of fact and conclusions of law. Thus,

> [w]hen neither party requests findings of fact and conclusions of law following a nonjury trial, all fact findings necessary to support the trial court's judgment are implied. If the reporter's record is filed on appeal, as it was here, implied findings may be challenged on factual- and legal-insufficiency grounds in the same manner "as jury findings or a trial court's [express] findings of fact[.]"

*Shields Ltd. P'ship v. Bradberry*, 526 S.W.3d 471, 480 (Tex. 2017) (footnote omitted).

Appellant bore the burden to prove her claim to quiet title. In this circumstance, we review Appellant's legal sufficiency challenges in the following method:

> When a party attacks the legal sufficiency of an adverse finding on an issue on which she has the burden of proof, she must demonstrate on appeal that the evidence establishes, as a matter of law, all vital facts in support of the issue. In reviewing a "matter of law" challenge, the reviewing court must first examine the record for evidence that supports the finding, while ignoring all evidence to the contrary. If there is no evidence to support the finding, the reviewing court will then examine the entire record to determine if the contrary proposition is established as a matter of law. The point of error should be sustained only if the contrary proposition is conclusively established.

*Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001) (citations omitted).

With respect to the factual sufficiency challenge, "[w]hen a party attacks the factual sufficiency of an adverse finding on an issue on which [it] has the burden of

proof, [it] must demonstrate . . . that the adverse finding is against the great weight and preponderance of the evidence." *Id.* at 242. To perform this task, we "must consider and weigh all of the evidence, and [we] can set aside [the judgment] only if the evidence is so weak or if the finding is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust." *Id.*

## VI. Why We Consider the Exhibits Admitted into Evidence at the Temporary-Injunction Hearing in Reviewing Appellant's Challenge to the Judgment

We described various exhibits admitted into evidence at the temporary-injunction hearing. We include those exhibits in our evidentiary review but not the testimony adduced at that hearing. We include the exhibits because it appears that the trial court took judicial notice of those exhibits when rendering judgment and that it was entitled to do so.

We do not include the testimony at the temporary-injunction hearing in our review because no transcript of the testimony was introduced into evidence at the bench trial. "In order for testimony from a prior hearing or trial to be considered in a subsequent proceeding, the transcript of that testimony must be properly authenticated and entered into evidence." *B.L.M. v. J.H.M.*, No. 03-14-00050-CV, 2014 WL 3562559, at *11 (Tex. App.—Austin July 17, 2014, pet. denied) (mem. op.).

The exhibits are a different matter. "A court may take judicial notice of the existence of pleadings and other documents that have been filed in a case, but *the court cannot take judicial notice of the truth of allegations in those documents unless they have been*

17

*admitted into evidence."* *Id.* (emphasis added). Further, with respect to the title documents, introduced by Appellee, the documents were copies certified by the Tarrant County Clerk. "[A] notarized, recorded, and certified deed meets the requirements of Texas Rule of Evidence 201 [permitting judicial notice of adjudicative facts], and . . . judicial notice is appropriate for such documents." *Iqbal v. Fed. Nat'l Mortg. Ass'n*, No. 03-15-00667-CV, 2017 WL 2856737, at *3 (Tex. App.—Austin June 29, 2017, pet. denied) (mem. op.) (collecting cases permitting judicial notice of title records).

Below, the trial court did not explicitly state on the record that it was taking judicial notice of the exhibits from the temporary-injunction hearing, but the parties continuously referenced the exhibits. Further, the judgment recites that the trial court had considered "the pleading[s] and *official records* on file in this cause." [Emphasis added.] "[W]e may presume that a trial court took judicial notice of the file even if there is no record that the trial court did so expressly." *Id.* "When making such a presumption, we take care to ensure that parties are not denied the opportunity to be heard, which is guaranteed under Texas Rule of Evidence 201(e)." *Id.* Here, both parties continuously referred to the documents admitted at the temporary-injunction hearing. It appears that the parties each took it as a given that the trial court was considering the exhibits that had been admitted at the temporary-injunction hearing.

## VII. The Elements of a Quiet-Title Claim

In the trial court, Appellant described the suit that she had filed in federal court as one for wrongful foreclosure and the current suit as one to quiet title. Appellee did not raise a defense that the federal suit had any preclusive effect in the trial court suit. Thus, we review Appellant's suit as a claim to quiet title based on the claim that no lien existed on the Property because the lien allegedly encumbering the Property had been released.

> In general terms, a suit to quiet title has the following characteristics:
>
> A suit to quiet title is equitable in nature, and the principal issue in such suits is "the existence of a cloud on the title that equity will remove." *Florey v. Estate of McConnell*, 212 S.W.3d 439, 448 (Tex. App.—Austin 2006, pet. denied) (quoting *Bell v. Ott*, 606 S.W.2d 942, 952 (Tex. Civ. App.—Waco 1980, writ ref'd n.r.e.)). A "cloud" on legal title includes any deed, contract, judgment lien[,] or other instrument, not void on its face, that purports to convey an interest in or makes any charge upon the land of the true owner, the invalidity of which would require proof. *Wright v. Matthews*, 26 S.W.3d 575, 578 (Tex. App.—Beaumont 2000, pet. denied). A suit to quiet title "'enable[s] the holder of the feeblest equity to remove from his way to legal title any unlawful hindrance having the appearance of better right.'" *Florey*, 212 S.W.3d at 448 (quoting *Thomson v. Locke*, 1 S.W. 112, 115 (Tex. 1886)).

*Mortg. Elec. Registration Sys., Inc. v. Groves*, No. 14-10-00090-CV, 2011 WL 1364070, at *2 (Tex. App.—Houston [14th Dist.] Apr. 12, 2011, pet. denied) (mem. op.).

Case law describes two types of quiet-title actions, one being tantamount to an action for trespass to try title that places the burden on plaintiffs to establish their own chain of title. *Id.* The second type of quiet-title action involves a situation where there is no dispute about the validity of the plaintiff's title:

19

The second type of claim, which involves other "clouds" on an undisputed owner's title to real property, challenges an adverse interest that impacts title and possession only indirectly. *See Florey*, 212 S.W.3d at 449; *see also Max Duncan Family Inv[s]., Ltd. v. NTFN Inc.*, 267 S.W.3d 447, 453–54 (Tex. App.—Dallas 2008, pet. denied) (undisputed property owner's suit to invalidate promissory note and lien securing note "involve[d] more than just title and possession of real property"); *Cadle Co. v. Ortiz*, 227 S.W.3d 831, 837–38 (Tex. App.—Corpus Christi[– Edinburg] 2007, pet. denied) (undisputed property owner's post-foreclosure suit to invalidate mechanic's lien distinguished from trespass[-]to[-]try[-]title action); *Sw. Guar. [Tr.] Co. [v. Hardy Rd. 13.4 Joint Venture]*, 981 S.W.2d [951,] 957 [(Tex. App.—Houston [1st Dist.] 1998, pet. denied)] (undisputed property owner's action to declare lien invalid was "really one to quiet title"). A claim is sufficiently adverse if its assertion would cast a cloud on the owner's enjoyment of the property. *See Katz v. Rodriguez*, 563 S.W.2d 627, 629 (Tex. Civ. App.—Corpus Christi 1977, writ ref'd n.r.e.). To remove such a cloud, a plaintiff must "allege right, title, or ownership in herself with sufficient certainty to enable the court to see she has a right of ownership that will warrant judicial interference." *Wright*, 26 S.W.3d at 578.

*Id.* at *3. Some dispute exists about the validity of the second species of quiet-title action. *See Martinez v. Universal Am. Mortg. Co.*, No. 4:14-CV-1285, 2015 WL 12839152, at *4 (S.D. Tex. Mar. 13, 2015) (op. and order) (questioning the validity of *Groves*'s second category of quiet-title claims).

We view Appellant's quiet-title claim as falling into the second category. There appears to be no dispute that Appellant held title to the Property before the foreclosure. Thus, we need not resolve the issue of the burden a plaintiff in a quiet-title action bears to establish the strength of the plaintiff's title. Instead, the question is whether Appellant proved a cloud on her title because there was no lien on the Property at the time of the foreclosure. We may resolve this case by concluding that

20

Appellant failed to prove the invalidity of the 2015 Deed of Trust and thus cannot establish that the lien on the deed of trust or the foreclosure of the lien clouded her title.

## VIII. Our Resolution of the Appeal

The pivotal fact is that two deeds of trust created liens that encumbered the Property. Appellant focused on the 2011 Deed of Trust and offered a document that released the lien created by that deed of trust. But that effort left the 2015 Deed of Trust unchallenged. It was the latter deed of trust that was actually foreclosed. Thus, Appellant's quiet-title action fails because she did not establish the invalidity of the foreclosure or the lien upon which it was based.

The specific evidence that Appellant relied on was the release repeatedly referenced in the trial. But that release only released the 2011 Deed of Trust. It said nothing about releasing the note Appellant had executed to purchase the Property, and indeed the 2015 Deed of Trust referenced another note executed by Appellant and contained a provision preserving the 2011 lien created by the 2011 Deed of Trust even if it were released. The words of the release itself show no intent to impact the 2015 Deed of Trust, and the quoted provision of the 2015 Deed of Trust reinforces a conclusion that a release of the 2011 Deed of Trust was not intended to effectuate a release of the latter deed of trust or to show payment of the debt underlying its lien.

The other evidence that Appellant relied on included a document from an unknown source that said a loan had been fully paid off. But nothing in the

document ties it to any of the title documents before the trial court or the note that Appellant had executed in 2011 or the one referenced in the 2015 Deed of Trust. The document does not prove that either note was paid. To the contrary, Appellant acknowledged that she had made payments to the assignee of the 2015 Deed of Trust. And when asked if she had a check paying off the note for the Property's purchase, Appellant claimed that she did. But she offered no proof of payment and could state only that she believed that some manner of "electronic signature" constituted payment. The vagueness of this response hardly proves as a matter of law that the debt securing a lien on the Property had been satisfied or supports an argument that such a finding is against the great weight and preponderance of the evidence.

Appellant did offer one document that was written by the 2015 Deed of Trust's beneficiary, Freedom Mortgage. But that document is not conclusive proof of the release of lien created by that deed of trust. The document is dated months after Freedom Mortgage assigned the lien created by the 2015 Deed of Trust to Nationstar, the party that foreclosed. Also, the document states that the "loan was service released" before the date of the assignment; there is no indication what was meant by "service released," nor is there any statement that a lien at one time held by Freedom Mortgage had been released or that the note that Appellant had executed to purchase the Property or the one referenced in the 2015 Deed of Trust had been paid in full.

Appellant claimed that the holder of the 2015 Deed of Trust was unable to document its lien when she had made an inquiry, but she did not introduce any

22

document supporting this contention. It was for the trial court to decide whether her testimony that this event occurred was credible. *See Merry Homes, Inc. v. Luu*, 312 S.W.3d 938, 943 (Tex. App.—Houston [1st Dist.] 2010, no pet.) (stating that in a bench trial, the trial court has the sole authority to determine the credibility of the witnesses, to determine the weight of their testimony, and to resolve conflicts and inconsistencies in the evidence). Appellant also claimed that the "secretary of state" told her that no lien was filed against the Property. However, instruments affecting title are not filed with the secretary of state but are instead filed in the county where at least a part of the property is located. *See* Tex. Prop. Code Ann. § 11.001(a).

## IX. Conclusion

We have struggled to interpret the issues that Appellant raises in her brief, the claims that she made in the trial court, and the record of the trial. After this effort, we conclude that there is some evidence that liens encumbered the Property and that Appellant has failed to conclusively prove that no lien encumbered the Property at the time of foreclosure. An implied finding to that effect is not against the great weight and preponderance of the evidence. Accordingly, we overrule Appellant's sufficiency challenges, and we affirm the trial court's judgment.

/s/ Dabney Bassel

Dabney Bassel
Justice

Delivered: September 24, 2020

23